[Civ. No. 14159.   Second Dist., Div. One.   June 13, 1944.]

MAYNARD GARRISON, as Insurance Commissioner, etc., Appellant, v. STATE OF CALIFORNIA et al., Defendants; CALIFORNIA EMPLOYMENT STABILIZATION COMMISSION et al., Respondents.

Morton L. Barker for Appellant.

Gibson, Dunn & Crutcher, Norman S. Sterry and Robert F. Schwartz as Amici Curiae on behalf of Appellant.

Robert W. Kenny, Attorney General, Clarence A. Linn, Deputy Attorney General, and Forrest M. Hill and Doris H. Maier for Respondents.

DRAPEAU, J. pro tem.—The Insurance Commissioner is named as plaintiff in this case, but inasmuch as he is conservator for a California insurance company, reference to the plaintiff hereafter will mean the insurance company. The defendant is the California Employment Stabilization Commission. And the problem to be determined is whether or not certain classes of agents of the insurance company come

within the provisions of the California Unemployment Insurance Act. These are district agents, general agents, debit agents, and rewrite agents.

While the briefs contain argument and discussion as to the status under the California Unemployment Insurance Act of one inclusive class comprising all insurance agents, a determination of that particular question, if it were possible, is not necessary to a decision in this case. All that is required is to fix the status of the several classes of agents above named and to say whether or not as to them the commission is entitled to enforce penalties and contributions to the unemployment insurance fund, as against the plaintiff.

Cases from other states construing similar statutes with reference to insurance agents are not of much help, because of material differences in definitions of the relationship in the laws of each state when compared with each other and with our own California Unemployment Insurance Act (Stats. 1935, p. 1226; Deering's Gen. Laws, Act 8780d).

The federal statute, after which our California law is modeled, expressly exempts insurance agents of all classes, whose compensation is wholly derived from commissions. The California law does not contain this provision.

Cases defining the relationship of master and servant, employer and employee, and independent contractor, in tort and in contract actions and in actions involving workmen's compensation, become helpful in the application of the California Unemployment Insurance Act to the classes of agents here under consideration.

The definition of employment in the statute is in section 6.5, as follows:

" 'Employment,' subject to the other provisions of this act, means service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied.''

This definition may be shortened to read: ''Service performed for wages or under any contract of hire.''

The meaning of each of these ten words is well established and understood, except possibly that of the word ''hire.'' In a bankruptcy case in the federal court, *First National Bank of Wilkes-Barre* v. *Barnum,* 160 F. 245, there is an interesting discussion of the statutory meaning of this word:—

"The word 'hire' is rather associated with the act of employment than the reward for service done; and in the latter connection is more on the plane of wages than salary, although in a sense it comprehends both; and is also applied to engaging the use of property. We hire a coachman, a gardener, or a cook; or a carriage to take a ride. And may also be said to hire a superintendent, a bookkeeper, or a clerk, although it would seem more correct, in the latter instances, to say engage or employ. In some communities, a farm hand is called a hireling, without intending any reflection, although in general speech the term is one of reproach. As further defining its use, a laborer, according to Sacred Writ, is said to be worthy of his hire. And coming up from the people, as the word thus does, it is sometimes applied, out of place, to the securing of professional services, as where one is said to hire a lawyer, a doctor, or a person of that class."

In the California case of *Mono County* v. *Industrial Accident Commission*, 175 Cal. 752, 753 [167 P. 377], construing the meaning of the word "employee" as used in the Workmen's Compensation Act, our Supreme Court observes: "The essential condition of the relation of employer and employee is 'service under any appointment or contract of hire, or apprenticeship.'"

Therefore it is clear enough that the relationship contemplated by the California Insurance Act is that of employer and employee, and that it was not the intent or the purpose of the Legislature to include any independent contractor.

In *Baugh* v. *Rogers*, 24 Cal.2d 200, 206 [148 P.2d 633], the factors to be used in determining whether one is an employee or an independent contractor are recapitulated:— "The distinction between the status of independent contractor and that of employee has often been considered by this court, and it is well established that a material and generally conclusive factor is the right of the employer to exercise complete and authoritative control of the manner in which the work is done. The existence of such right of control and not the extent of its exercise constitutes the relationship that of employer-employee. (*S. A. Gerrard Co.* v. *Industrial Acc. Com.* (1941), 17 Cal.2d 411, 413, 414 [110 P.2d 377]; *Burlingham* v. *Gray* (1943) *supra*, 22 Cal.2d 87, 95, 99 [137 P.2d 9]; *Riskin* v. *Industrial Acc. Com.* (1943), 23 Cal.2d 248, 253 [144 P.2d 16].) 'Perhaps no single cir-

cumstance is more conclusive to show the relationship of an employee than the right of the employer to end the service whenever he sees fit to do so.' (*Press Pub. Co.* v. *Industrial Acc. Com.* (1922) 190 Cal. 114, 120 [210 P. 820]; *Hillen* v. *Industrial Acc. Com.* (1926) 199 Cal. 577, 582 [250 P. 570]; *Chapman* v. *Edwards* (1933), 133 Cal.App. 72, 77 [24 P.2d 211].) 'an employee may quit, but an independent contractor is legally obligated to complete his contract.' (*Los Flores S. Dist.* v. *Industrial Acc. Com.* (1936), 13 Cal.App.2d 180, 183 [56 P.2d 581].)''

Coming then to the application of the California Unemployment Insurance Act to the insurance business, it becomes apparent that an insurance agent who maintains his own office and pays his own expenses, whose compensation is solely from commissions, who controls his own time, who is agent for several different companies, and who sells several different forms of insurance—such as life, health, accident, and fire—is an independent contractor, and may not be included within the provisions of the act.

On the other hand, in California, an agent who works for one company only, the company furnishing his office and paying all of the cost of its operation, controlling his time in its entirety, with the right to direct the manner of performance of his work, and to discharge him for any cause sufficient to the employer, is undoubtedly an employee coming within the provisions of the act, even though all of his compensation may be from commissions.

With these preliminary observations we will now discuss the several classes of agents here involved.

Subsequent to 1938 the status of the district agent was set forth in a written contract with the company, in which the following appears:

''(1) The Company hereby appoints the Agent for the purpose of procuring applications for life insurance, delivering policies, collecting and paying over to the Company the initial premiums on the insurance so effected.

''(2) The Agent is hereby vested with the authority and powers and is subject to the terms, conditions, and limitations herein particularly set forth. *Nothing herein contained shall be construed to create the relation of employer and employee between the parties. The agent shall be free to exercise his own judgment as to the persons from whom he will solicit*

*insurance and the time and place of solicitation,* but the Company may from time to time prescribe rules and regulations respecting the conduct of the business covered hereby, not interfering with such freedom of action of the Agent, which rules and regulations shall be observed and conformed to by the Agent.'' (Italics added.)

While language of this kind in a contract does not conclusively establish the fact, in the absence of any evidence of conduct of the parties to the contrary, such a recital is prima facie proof of the relationship of independent contractor and principal. (*Burlingham* v. *Gray,* 22 Cal.2d 87 [137 P.2d 9].) And without proof that the true relationship of the parties was that of employer-employee such recital in an insurance agent's contract compels only one conclusion to be drawn, to wit: That the agent is an independent contractor. (*Baugh* v. *Rogers, supra,* at p. 206.)

A careful review of the bill of exceptions discloses no testimony before the trial court which would negative the language quoted from the contract. Respondent argues that the provision giving the insurance company the right to prescribe rules and regulations relative to the conduct of the business makes the agent an employee. Such a covenant is necessary for the proper conduct of the insurance business, and does not in itself establish the relationship of the agent as being an employee or independent contractor. Therefore the district agents of the company subsequent to 1938 were not employees within the meaning of the California Unemployment Insurance Act.

Prior to 1938 this portion of the district agent's contract read as follows: ''Witnesseth; The Company hereby appoints the Agent for the purpose of procuring applications for life insurance, delivering policies, collecting and paying over to the Company the initial premiums on the insurance so effected, and performing such other duties as may be required by the Company, all in accordance with the Company's rules and rates in force at the time, and such specific instructions as the Company may give from time to time.''

This provision in the contract brings the district agent within the rule set forth in *Robinson* v. *George,* 16 Cal.2d 238 [105 P.2d 914], where at page 242, the following appears: ''The rule, as stated by plaintiff, is that the fact that one is performing work and labor for another is prima facie evi-

dence of employment and such person is presumed to be a servant in the absence of evidence to the contrary. (*Hillen* v. *Industrial Acc. Com.,* 199 Cal. 577 [250 P. 570, 13 Cal. Jur. 1041]; and cases cited.)''

█ The general agent solicited insurance as a district agent, and in addition had a number of district agents under his supervision. From the business which these subordinate district agents produced, the general agent was paid an overriding commission. The contracts with this type of agent were the same as the contracts with the district agents. Therefore our conclusions as to the general agents are the same as with reference to the district agents, and for the same reasons. Prior to 1938, they were employees; subsequent to that date they were not.

█ At one time in the history of this insurance company most of its contact with its policyholders was through a number of employees called debit agents. In insurance parlance a debit agent is one who collects weekly or monthly premiums from a number of policyholders, generally small policies, and generally industrial insurance. The accounts of these policyholders are debited to the agent; hence the appellation debit agent. Before the commencement of this action the company discontinued using debit agents and substituted district and general agents. As to these debit agents the commission demanded payment from the company of $2,700 upon the ground that they were employees within the act. The company paid the $2,700 under protest and commenced action. The commission filed an answer and counterclaim, and demanded additional payments because of the district and general agents heretofore discussed, and because of re-write agents hereafter to be discussed.

The debit agent was required by the contract between him and the company to devote his entire time to the business of the company, and his duties were defined. Therefore there is in the record at least prima facie evidence which will support the finding that he was an employee.

█ Re-write agents were employed to interview as many of the company's policyholders as possible for the purpose of inducing them to change their policies. This was made necessary because of a directive by the Insurance Commissioner requiring the insurance company to revise its insurance structure and to change certain of its business practices.

Re-write agents were appointed by a letter to them by the company, stating a compensation which the company would pay them on premiums on exchanged and additional insurance secured by them from policyholders. One of defendant's witnesses testified that he was a re-write agent, that he was furnished cards by the company, with the names of policyholders he was to interview, that he worked under the direction of a supervising representative of the company, to whom he made daily reports, that the witness was told where to go and whom to interview. Despite the fact that his compensation was solely from commissions and that he provided his own transportation and expenses, this testimony is sufficient to support the finding that the re-write agent was an employee.

But there is another rule which must be applied before a proper judgment may be rendered in this case. Before reading the briefs and hearing the argument this court was aware of the social and humanitarian objectives of the lawmaking power of this State embodied in the California Unemployment Insurance Act. Everyone should join in extolling the desirability of insurance against the evils of unemployment. ■ But, worthiness of legislation for any particular group of people should never be a pretext for conduct on the part of the State which would do injustice to some other group.

■ An insurance company is nothing more nor less than an aggregation of persons who have voluntarily pooled their resources to protect each other from the hazards to themselves as individuals of casualties incident to the vicissitudes of human life,—casualties which may and often are as serious as unemployment. ■ Unemployment insurance is simply an aggregation of employees who are compelled by law to build up for themselves a fund to insure against unemployment. And, by law, employers and employees are both required to contribute to the fund, the measure used being the wages paid. In the event the employer fails to collect the employee's portion of the contribution, the law prescribes a penalty whereby the employer must then himself pay to the fund the amount not collected. In the last analysis, these two groups of people are the real parties in interest in this case. And as between them it is the obvious duty of our courts to endeavor to hold the scales of justice exactly even.

■ From January 1, 1936, until March 19, 1937, (stip-

ulated for the purposes of this case to be April 1, 1937) the defendant promulgated a rule which in part reads as follows:

"Rule 8.17. Employees—Insurance Agents, Solicitors, and Brokers Exempt. General and Branch Officers Nonexempt.— Agents and solicitors of insurance of every kind or nature whose principal remuneration arises from commissions are deemed contractors and no contributions are payable on their compensation."

This rule was in effect during a part of the time employees considered in this case were in the service of the plaintiff. It is conceded that the principal remuneration of all of them came from commissions, and that all of them were insurance agents. As stated, the employer was required to deduct a percentage of the compensation of every employee covered by the act, to be applied to the unemployment insurance fund administered by the defendant, and if the employer failed to make the deduction, he was liable therefor. With this rule promulgated by the commission and in effect no deductions were made from the pay of these employees by the insurance company. And obviously, after it was abrogated, collection of the employees' percentage during the time the rule was in effect was for all practical purposes difficult and expensive if not impossible. With the lapse of time involved and periodical allocation of costs to policyholders, it would be unfair now to require the insurance company to pay its contribution for these employees.

Defendant admits these facts, but asserts that the commission was without power to promulgate the rule in the first place, and that the rule was therefore void and not binding upon it.

It is unnecessary to pass upon the power to make the rule, because the commission is estopped to take such a position. The doctrine of equitable estoppel of governmental agencies where justice and right require it has but recently been reaffirmed and approved by our Supreme Court in *Farrell* v. *County of Placer*, 23 Cal.2d 624 [145 P.2d 570]. And in that case is repeated the exceedingly apt observation from 48 Harvard Law Review, 1299:—"If we say with Mr. Justice Holmes, 'Men must turn square corners when they deal with the Government', it is hard to see why the Government should not be held to a like standard of rectangular rectitude when dealing with its citizens."

Therefore, the defendant may not now collect from the

insurance company for these employee agents during the period that rule 8.17 was in effect.

The judgment is reversed and the cause remanded to the trial court with instructions to enter judgment in accordance with the views hereunder expressed.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied June 29, 1944, and respondents' petition for a hearing by the Supreme Court was denied August 10, 1944.