[Civ. No. 14543. First Dist., Div. One. Dec. 27, 1950.]

BARTLEY E. HOLDEN, Appellant, v. CALIFORNIA EMPLOYMENT STABILIZATION COMMISSION et al., Respondents.

Charles P. Scully for Appellant.

Fred N. Howser, Attorney General, Charles W. Johnson and William L. Shaw, Deputy Attorneys General, for Respondents.

Brobeck, Phleger & Harrison for Respondent (Bethlehem).

PETERS, P. J.—Petitioner, in the trial court, filed a petition for a writ of mandate seeking a review of a decision of the California Unemployment Insurance Appeals Board (hereafter referred to as the Appeals Board) denying him unemployment benefits. Nine months later the respondents, who had filed returns to the alternative writ of mandate, moved to dismiss the petition on the ground that it was sham and vexatious. The motions to dismiss were granted by minute order and by formal judgments. Petitioner appeals.

There is some dispute as to whether petitioner has any valid appeal pending, and, if he has, as to who are the respondents. The following table sets forth the procedural background of the proceeding:

*February 7, 1949*—petitioner filed, in the trial court, his petition for a writ of mandate and the alternative writ issued. Named as respondents were the Appeals Board and its members, the California Employment Stabilization Commission, and its members (hereafter referred to as the commission), the State Director of Employment, and Bethlehem-Alameda Shipyard, Inc. (hereafter referred to as Bethlehem).

*April 4, 1949*—Bethlehem filed its return by way of answer.

*April 6, 1949*—the other respondents filed as their return a general and special demurrer and answer. The demurrer was later overruled.

*November 3, 1949*—the respondents, other than Bethlehem, filed a motion to dismiss the petition upon the ground that "the petition is fictitious, groundless, vexatious, sham, annoying and harassing." Bethlehem filed a separate and similar motion the same day. The motion filed by the respondents, other than Bethlehem, was supported by affidavit, and petitioner filed a counteraffidavit.

*December 12, 1949*—the trial court by minute order granted *both* motions to dismiss. This minute order did not recite that it was to be followed by a formal order or judgment.

*December 14, 1949*—a formal judgment was entered in favor of the respondents other than Bethlehem, the latter being expressly excluded from this judgment.

*December 15, 1949*—for some reason not entirely clear, a formal order granting the motion to dismiss of the respondents, other than Bethlehem, was entered. This order specifically excluded Bethlehem from its operation.

*December 16, 1949*—petitioner filed his notice of appeal, the notice stating that the appeal was "from the judgment entered . . . on the 14th day of December, 1949, in favor of the re-

spondents and against the petitioner, and from each and every portion of that judgment.'' This notice was addressed to all respondents and to their attorneys, including respondent Bethlehem, but the appeal is from a judgment that specifically excludes Bethlehem. This is the only notice of appeal that has been filed.

*December 22, 1949*—a formal order and a judgment granting Bethlehem's motion to dismiss were filed.

 The question immediately presented is whether there is any appeal at all pending. The minute order of December 12, 1949, dismissing the petition, was an appealable order. (*Boyer* v. *City of Long Beach,* 47 Cal.App. 617, 618 [191 P. 35].) This is conceded by all the parties to this appeal. Since that order did not provide that it was to be followed by a formal order or judgment, the appeal should have been taken from the minute order and not from the judgment. The judgment of December 14, 1949, was *functus officio,* and no valid appeal could be taken from that judgment. (*Gwinn* v. *Ryan,* 33 Cal.2d 436, 438 [202 P.2d 51]; *Nealis* v. *Carlson,* 98 Cal.App.2d 65, 66 [219 P.2d 56]; *Pessarra* v. *Pessarra,* 80 Cal.App.2d 965, 966 [183 P.2d 279]; Rules on Appeal, rule 2(b) (2).) Predicated upon this analysis, Bethlehem contends that no appeal at all is pending, and certainly no appeal as against it. The attorney general, representing all respondents, other than Bethlehem, concedes that the appeal is effective as to his clients, and expresses the belief that the appeal is also effective as to Bethlehem.

 It will be noted that the notice of appeal was filed within four days of the entry of the appealable order of December 12th, and within two days of the entry of judgment. Thus, the appeal was filed well within the time prescribed by rule 2(a)—within 60 days from the date of the entry of the order or judgment. It will also be noted that the notice of appeal was addressed to all respondents, including Bethlehem, and to their counsel. Although the notice of appeal refers to the judgment of December 14th as the judgment appealed from, the intent of appellant to seek a review of the action of the trial court in dismissing his petition is crystal clear. No one connected with this appeal was or could have been misled by the misdescription of the order of December 12th as the judgment of December 14th.

Notices of appeal, of course, are to be liberally construed to permit, if possible, a hearing on the merits. It has been held that a misdescription of an "order" as a "judgment," or

vice versa, will not invalidate a notice of appeal. (*Seven Up etc. Co.* v. *Grocery etc. Union,* 97 Cal.App.2d 623, 625 [218 P.2d 41]; *Crane* v. *Livingston,* 98 Cal.App.2d 699, 702 [220 P.2d 744]; *Kellett* v. *Marvel,* 6 Cal.2d 464, 471 [58 P.2d 649].) An incorrect date in the notice of appeal will not necessarily invalidate it. (*Title Guarantee & Trust Co.* v. *Lester,* 216 Cal. 372, 374 [14 P.2d 297].) Even closer to the present case is *Estate of Stone,* 173 Cal. 675 [161 P. 258], where the notice of appeal referred to a "judgment on the verdict" entered on a certain date, and the only appealable judgment was one of a later date—in fact, entered four days after the notice of appeal was filed. The court held (p. 677) that, although there was, as here, an incorrect designation of the proceeding appealed from and a wrong date, the appeal was effective.

Rule 2(b) (2) was intended to clarify the law for the benefit of practicing attorneys, not to constitute a trap for the unwary or inexperienced. Where it is perfectly apparent, as it is here, that appellant seeks a review of an order of dismissal, and where, as here, the notice of appeal is filed in ample time from either the entry of the order or judgment, and where, as here, the notice of appeal is addressed to all respondents and to their attorneys so that no one is misled, and where, as here, no prejudice to respondents exists, the notice of appeal should be treated as being from the appealable order even if the notice incorrectly designates the "order" as a "judgment," and erroneously gives the date of the entry of the judgment rather than that of the order. It is therefore held that the notice of appeal is effective as to all respondents.

On the merits, it is quite clear that the trial court erroneously dismissed the petition for a writ of mandate.

The petition for mandate was filed February 7, 1949. It discloses that petitioner was a member of a designated union and worked for Bethlehem until October 29, 1945; that thereafter members of his union were unable to work because of a trade dispute between Bethlehem and another union; that the commission held that members of petitioner's union were not entitled to unemployment benefits; that petitioner's local union thereupon perfected an appeal to the Appeals Board on behalf of its members; that on such appeal it was held that the members of petitioner's union were entitled to unemployment benefits; that the Appeals Board has ruled that petitioner is not entitled to the benefits of that decision because his name was inadvertently omitted from the list of the liti-

gants. The key allegations, so far as the present appeal is concerned, are as follows:

"That it had been agreed by the Department, by and through the Director, that any individual who was a member of Local 9 and whose name was omitted by error or mistake from the master list attached to such group appeal, would be treated in an identical manner with all those members of said Local 9 included in said group appeal, namely Case No. 5252;

"That through error the name of petitioner was omitted from the master list in said group appeal and that although petitioner relied upon the representation of the Director hereinabove mentioned, contrary to such representation petitioner was not similarly treated but on the contrary was denied benefits, with the result that his reliance upon such representation caused him irreparable damage."

It is also alleged that petitioner, upon discovering the omission of his name, attempted to perfect his appeal from the decision denying him benefits, but that such benefits were denied him; that an appeal was taken to a referee who reversed the department and directed that benefits be paid; that the Appeals Board reversed the referee.

The opinion of the Appeals Board is attached to the petition as an exhibit. From that opinion it appears that petitioner filed a claim for benefits on November 23, 1945, which was denied on December 21, 1945. Notice of this denial was mailed to petitioner, and he admits receipt of this notice. This notice, among other things, informed petitioner that he must appeal to a referee within seven days of the receipt of this notice. It is admitted that within this seven-day period petitioner went to the office of his labor union and signed a form designated as a blanket appeal. The union perfected the group appeal on behalf of its members, but petitioner's name was inadvertently omitted. The Appeals Board decided that the union members who appealed were entitled to benefits. That thereafter petitioner sought to appeal. The Appeals Board held that petitioner's claim was not timely and had been filed too late; that the failure of the union to list petitioner in the group appeal was a failure of his agent to act properly. In connection with the contention of petitioner that the Department had agreed with the union that any individual whose name was inadvertently omitted should nevertheless be entitled to the benefits of the group appeal, the Appeals Board in the decision sought to be reviewed stated:

"We do not think that the agreement between the Depart-

ment of Employment and the claimant's labor organization which the latter alleges existed goes as far as contended for by counsel for the claimant. As we understand the alleged agreement it provided that:

"1. Labor organizations could act as agents for members to file appeals for them to a Referee, grouping the members in a so-called blanket or group appeals.

"2. Only those members who were listed on a blanket or group appeal and who had claims for benefits on file with the Department of Employment prior to the time a Referee held a hearing would be considered actual parties to the appeal and Referee's decision."

The board added: "Under the terms of this alleged agreement as we interpret them it could not have been the intention of the Department that individuals who had been omitted from a blanket or group appeal be added as parties once a Referee had held his hearing and issued his decision."

It is this portion of the decision of the Appeals Board that petitioner seeks to have reviewed in the mandate proceeding— he contending that there was a positive agreement by the Director of Employment with the union that all names of members inadvertently omitted from the group appeal would be entitled to the benefits of that appeal. This issue has never been passed upon by the trial court because that court dismissed the petition as being sham and vexatious on the motion of respondents.

The trial court's order of dismissal was apparently based on the theory that the petition for a writ of mandate did not state a cause of action against any of the respondents. There seems to be some doubt in the cases as to whether a complaint may be dismissed as sham because of a failure to state a cause of action.[1] Whatever the true rule may be where the complaint does not and cannot be amended to plead a cause of action, the rule is well settled that: "It is error to dismiss a complaint for sham pleading if it contains at least one cause of action which is unassailable." (*Saunders* v. *Hibernia S. & L. Soc.*, 23 Cal.2d 738, 740 [146 P.2d 683]; see, also, *Kelley* v. *Kriess*, 68 Cal. 210, 212 [9 P. 129].) That is this case.

[1] In *Pacific Paving Co.* v. *Vizelich*, 141 Cal. 4, 10 [74 P. 352], it was held that a motion to dismiss cannot be used to attack a complaint defective because it does not state a cause of action. The same rule, supported by many cases, is stated in 9 Cal.Jur., p. 522, § 14. However, the contrary rule was announced in *Monahan* v. *Blossom*, 88 Cal.App.2d 951, 952 [199 P.2d 738].

■ The petition for the writ of mandate alleges a definite agreement between the Director of Employment and the union to the effect that a group appeal could be taken, and that "any individual who was a member of Local 9 and whose name was omitted by error or mistake from the master list attached to such group appeal, would be treated in an identical manner with all those members of said Local 9 included in said group appeal." While it is true that the Appeals Board has found a different agreement and found that the pleaded agreement did not exist, it is the propriety of that decision that is sought to be reviewed in the trial court. If the agreement pleaded in the petition for a writ of mandate actually existed, it either amounts to an agreement to extend petitioner's time to appeal, or it creates an estoppel against the commission to urge that the appeal was not filed in time.

The pertinent statute is section 67 of the Unemployment Insurance Act as it read between 1945 and 1947. (Stats. 1945, p. 2558, chap. 1369; repealed Stats. of 1947, p. 3003, chap. 1436.) Although that section then provided that an appeal to a referee had to be taken within seven days after receipt of notice, such provision was not absolutely mandatory as apparently are the time provisions for the taking of appeals in civil and criminal actions generally.[2] Section 67, as it read in 1945, contained no such rigid requirement. The section, in part, then read: "The claimant or any party to the determination may file an appeal from such initial determination within seven days after notification thereof, or within seven days after the date such notification was mailed to his last known address; provided that said seven-day limitation may be extended for good cause."

Thus, the section, as it read during the times here pertinent, recognized that the seven-day period could "be extended for good cause." If the Director of the Department of Employment made the agreement here alleged, it is quite apparent that he agreed for good cause to extend the period of seven days so as to permit the inclusion of names of union members inadvertently omitted. Thus, the petition pleads, in effect, that the seven-day period was extended by agreement. Even if this were not so, if such an agreement as pleaded was made,

---

[2]In *Estate of Hanley*, 23 Cal.2d 120 [142 P.2d 423, 149 A.L.R. 1250], and *People* v. *Lewis*, 219 Cal. 410 [27 P.2d 73], it was held that in civil and criminal cases the time requirements for taking an appeal are mandatory, and the courts cannot, for any reason, extend such time provisions. These rules were somewhat qualified as to criminal cases, at least, in *People* v. *Slobodion*, 30 Cal.2d 362 [181 P.2d 868].

the respondents are estopped from urging that the petitioner failed to comply with section 67.

Although there is a general policy against finding an estoppel against government or one of its agencies, there can now be no doubt that in a proper case a governmental agency may be estopped. (*County of San Diego* v. *California Water etc. Co.*, 30 Cal.2d 817, 825 [186 P.2d 124, 175 A.L.R. 747].) Several of the cases on this subject have involved the late filing of claims against governmental agencies in tort actions. The leading case is *Farrell* v. *County of Placer*, 23 Cal.2d 624 [145 P.2d 570, 153 A.L.R. 323]. That was an action against the county for injuries alleged to have been caused because of the defective condition of a bridge approach maintained by defendant. The applicable claims statute required that such a claim must be filed within 90 days of the accident. This statutory requirement had not been complied with, plaintiff alleging that she had been induced not to file a claim by reason of the representations of certain county officials. It was held that the county was estopped from complaining of the late filing of the claim. In so holding the court stated (p. 630) : ''Although it has been repeatedly held that compliance with the appropriate claim statute is mandatory and an essential requisite to plaintiff's cause of action, nevertheless the time element with respect to the filing of the claim is essentially procedural in nature [citations omitted] and is analogous to a statute of limitations. [Citations omitted.] It has been intimated by some authorities that the claim statute is the measure of the power of the governmental agency in paying the tort claims involved, and hence any deviation from that procedure cannot be dispensed with by waiver, estoppel, or otherwise. That conclusion, at least with respect to the time of filing the claim, is not supported by the statute or reason. . . . From the standpoint of the agency it has general power to pay claims arising from the liability imposed by the public liability act. Hence the filing of the claim within ninety days, while mandatory upon the claimant and a condition precedent to his cause of action, is nothing more than a procedural requirement as to the agency, which, as to the claimant, may be excused by estoppel. There are cases where the procedure specified in the statute is manifestly the measure of the power. [Citation omitted.] There are instances where the procedural steps are not the measure of the power and estoppel may be invoked against a governmental agency from relying upon irregularities therein. [Citations omitted.] This court has

held that compliance with the claim statute is not jurisdictional with respect to the power of a court to give judgment against the governmental agency where no claim was filed. (*Redlands etc. Sch. Dist.* v. *Superior Court,* 20 Cal.2d 348 [125 P.2d 490].)''

The respondent agency has, on at least two occasions, had an estoppel successfully invoked against it. (*La Societe Francaise* v. *California Emp. Com.,* 56 Cal.App.2d 534, 554 [133 P.2d 47] ; *Garrison* v. *State of California,* 64 Cal.App.2d 820, 829 [149 P.2d 711].) While these last two cases differ factually from the instant one, they do demonstrate that in a proper case an estoppel may be invoked against the state in general and this very agency in particular.

Once it is determined that the seven-day limit provided in section 67 is not the measure of the power of the commission, and that such time limit may, in a proper case, be extended, the reasoning of the Farrell case is here directly in point. Of course if, as found by the Appeals Board, no such agreement was made, then no basis for the estoppel exists. But if the trial court, which must exercise an independent judgment on the facts in such a proceeding, on substantial evidence, finds that the agreement pleaded in the petition for a writ of mandate was made, then an estoppel exists. It is quite apparent, therefore, that petitioner has either pleaded an extension of the seven-day period by agreement, or he has pleaded an estoppel against the commission urging noncompliance.

Respondents urge that even if the petition states a cause of action, the dismissal by the trial court must be upheld because the record shows lack of diligence on the part of petitioner in prosecuting his claim. The affidavit of respondents, other than Bethlehem, in support of their motion to dismiss avers that the petition for a writ of mandate was filed February 7, 1949, and that ''numerous continuances of hearing on the merits of the petition have occurred herein,'' but the affidavit fails to disclose at whose request such ''numerous continuances'' were granted, or the circumstances involved. The affidavit continues as follows: ''that on September 14, 1949, 10 a.m., petition for writ of mandate was called for hearing in Law and Motion Department before Judge Shoemaker presiding; that respondents appeared in said hearing prepared to resist the petition on the merits and accompanied by numerous witnesses in support of respondents; that on September 14, 1949, the petitioner through his counsel, Charles P. Scully, appeared and urged that the administrative record,

duly prepared herein, was incomplete and that because of the press of other business falling on September 14, 1949, counsel was not prepared to try the merits of the petition.'' The attorney for petitioner filed a counteraffidavit averring that petitioner has a meritorious cause of action, and that the purpose of the litigation is not to annoy, vex or harass the respondents, but is instituted in good faith.

It will be noted that the affidavit of respondents, other than Bethlehem, does not aver that the representation that the administrative record was incomplete was untrue.

There are some dates that must be considered. The affidavit of respondents avers that the petition for mandate was filed February 7, 1949, and that petitioner was not ready for trial on September 14, 1949. The motion to dismiss was filed November 3, 1949. Respondents' demurrer to the petition was filed April 6, 1949, and this demurrer was not overruled until September 30, 1949. It is quite apparent that on September 14, 1949, when the cause came on for hearing, the demurrer had not yet been ruled upon. With the demurrer still outstanding, it is questionable whether petitioner was obliged on September 14th to try the case on its merits. Moreover, what happened on September 14, 1949, does not appear in the record. Apparently the judge granted a continuance because the motion to dismiss was not filed until November 3, 1949.

Such a record does not justify a court in dismissing a petition that states a cause of action on the ground of lack of diligent prosecution. The code sections dealing with power to dismiss for lack of prosecution or undue delay are sections 581a and 583 of the Code of Civil Procedure. Section 581a deals with the service of summons and is not here applicable. Section 583 is the key section. It confers the power on a trial court in its discretion to ''dismiss any action for want of prosecution on motion of the defendant . . . whenever plaintiff has failed for two years after action is filed to bring such action to trial,'' and must be dismissed when not brought to trial within five years. The present action was filed February 7, 1949, answers were filed in April, and the petition dismissed December 12, 1949—ten months after it was filed, and eight months after the answers were filed. While the statutory provisions are not exclusive, and the courts have recognized that it is an inherent power of the court to grant motions to dismiss for reasons not set forth in the statute (see cases collected in note 36 Cal.L.Rev. 465), it has several times been held that section 583 fixes a minimum period of

two years during which a court is prohibited from dismissing for mere delay. (*Johnston* v. *Baker*, 167 Cal. 260 [139 P. 86]; *Romero* v. *Snyder*, 167 Cal. 216 [138 P. 1002]; *Jackson* v. *Thompson*, 47 Cal.App.2d 405 [118 P.2d 31]; *Cohn* v. *Rosenberg*, 62 Cal.App.2d 140 [144 P.2d 399].) As held in these cases, if this were not so, the minimum period of two years and the maximum period of five years set forth in section 583 would be meaningless. Even if the court possesses inherent power in its discretion to dismiss for failure to prosecute for less than two years, a dismissal in the present case, ten months after the petition was filed, on the showing made, would constitute an abuse of discretion. There is no showing at all that the ten months' delay was caused by petitioner. There is no showing of prejudice to respondents. For the foregoing reasons it must be held that the order appealed from cannot be supported on the theory that petitioner was guilty of lack of due diligence.

The order of December 12, 1949, granting the motions to dismiss is reversed.

Bray, J., and Wood (Fred B.), J., concurred.