[Civ. No. 17188.   First Dist., Div. Two.   Apr. 3, 1957.]

JOSEPH GEORGE, DISTRIBUTOR (a Corporation), Appellant, v. DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, etc., et al., Respondents.

Charles R. Wayland and Gallagher, Ruffo & Rainville for Appellant.

Edmund G. Brown, Attorney General, and Charles A. Barrett, Deputy Attorney General, for Respondents.

COMSTOCK, J. pro tem.*—This is an appeal from a judgment denying to appellant a peremptory writ of mandate directed to the Department of Alcoholic Beverage Control of California and the Director of Alcoholic Beverage Control.

The proceedings were instituted for the purpose of vacating and annulling an order of respondent department and its director revoking a distilled spirits wholesaler's license standing in the name of appellant and originally acquired by it in 1953.

For convenience in this decision the appellant, petitioner below, may be referred to as the "petitioner," the Department of Alcoholic Beverage Control of California as the "Department," the Director of Alcoholic Beverage Control, Russell S. Munro, as the "Director" and the State Board of Equalization of California as the "Board."

All the pertinent questions presented by the appeal arise from the petition and attached exhibits, the return filed by way of answer, the findings of fact and conclusions of law and the judgment. No testimony was taken at the trial. Attached to the petition was a transcript of proceedings, including testimony taken at the hearing before the Department conducted by the Honorable Ivores R. Dains, hearing officer.

As stated in appellant's opening brief, the case does not present a factual dispute. The grounds urged for reversal are designated as appellant's "position" on this appeal and are as follows: "(1) The State Board of Equalization was empowered and authorized to promulgate Rule 65. The Board

*Assigned by Chairman of Judicial Council.

was likewise legally authorized to reasonably construe said rule. (2) The construction placed upon Rule 65 permitting the holding of "frozen," or "inactive" or surrendered distilled spirits wholesaler's licenses was reasonable and within the power and authority of the Board. (3) Said construction had been accepted and had been unchallenged for many years prior to January 1, 1955, the date upon which the Department of Alcoholic Beverage Control succeeded to the powers and authority of the State Board of Equalization pursuant to Constitutional amendment. (4) Petitioner was never issued an effective license covering the premises in question for the reason that no license certificate was ever delivered to it. The physical custody and possession of the several certificates at all times remained with the Board and the Department without petitioner having access to them. (5) As an administrative agency the Department was without power to change or repudiate the long standing interpretation placed by its predecessor agency upon Rule 65 particularly where petitioner relied upon such interpretation to its detriment. The power and authority of the Department to abolish, change or otherwise interpret this rule as to present or future applications for licenses is not questioned. (6) Because of the manifest injustice inherent in the action of the Department the doctrine of equitable estoppel is applicable and should be invoked. (7) The interests of justice at least required reasonable notice to petitioner of the contemplated action of the Department to the end that petitioner might have been given an opportunity to dispose of the license or to utilize it in connection with premises outside of the City of Salinas."

We find no error in the proceedings or judgment.

Rule 65 of the Rules of the State Board of Equalization (Cal. Adm. Code, tit. 4) in effect in July, 1953, reads as follows: "65. *Surrender of License on Closing Business.* Every licensee who surrenders, abandons or quits his licensed premises, or who closes his licensed business for a period exceeding two weeks, shall, within ten days after surrendering, quitting, or abandoning the licensed premises, or closing his business, surrender his license or licenses to the Board."

Appellant contends that the Board and the Department, as administrative agencies of the state deriving their powers from the legislature under constitutional authority, had power to promulgate rules such as rule 65 and to interpret them. With this broad premise, we think there can be no

quarrel. (*California Drive-In Restaurant Assn.* v. *Clark,* 22 Cal.2d 287 [140 P.2d 657, 147 A.L.R. 1028].) ■ We do not agree, however, that such rules or interpretations may contravene clear provisions of law or that arbitrary, inconsistent, contradictory or unreasonable interpretations of rules may lawfully be adopted. (*Blatz Brewing Co.* v. *Collins,* 69 Cal.App.2d 639 [160 P.2d 37] ; *American Distilling Co.* v. *State Board of Equalization,* 55 Cal.App.2d 799 [131 P.2d 609].) The point here is whether the Board, in preparing a license certificate for appellant (it already having one license for premises in the same city and not intending to do business at the premises covered by the second license) and keeping it in its possession, but nevertheless made out as issued and recorded in appellant's name, with license fee fully paid by it, and charging it against the quota of licenses authorized for Monterey County, under all circumstances present, acted unlawfully and in excess of authority. Respondents do not here question the validity of rule 65. They challenge the right of the Board to have applied said rule as it did and claim that it contains no authority for the questioned acts done purportedly under it in this case. They further urge that the action taken by the Department in revoking the license was proper and fully supported by the record and, hence, that there is no duty to vacate or annul the order or reinstate appellant's license.

The essential facts are as follows:

Petitioner corporation for a period of years had owned a distilled spirits wholesaler's license for premises at 310 Monterey Street, Salinas, California. This license may for convenience be referred to as "License No. 1." On or about July 14, 1953, petitioner applied to the Board for the transfer to it of another license of the same type covering the premises at 124 Monterey Street, Salinas, which had theretofore been issued to and was then held by Andrew K. Thanos Company, Inc. and paid the Board the prescribed fee of $250. Petitioner paid the Thanos Company $25,000 for said license. After investigation, a report was filed with the Board by Mr. Jerry M. O'Brien, District Liquor Administrator for District Seven, recommending such transfer and stating that the license certificate when issued was to be held by the Board under the provisions of rule 65. The report and recommendation were approved by the Board and on or about August 25, 1953, a distilled spirits wholesaler's license, Certificate Number G-254A, for the period July 1, 1953, to June 30, 1954, was

issued and recorded in the name of petitioner by the Board, but not physically delivered to petitioner. Contemporaneously with the application for said license a letter was written by the attorney for petitioner to the Board stating that the license was to be issued for record only and to be held by the Board under rule 65. It was held by the Board purportedly as surrendered under rule 65. We may refer to this license as "License No. 2."

When petitioner purchased said license from the Thanos Company and at all times when said proceedings in connection with it were being taken, petitioner did not intend to keep any stock of liquor at 124 Monterey Street, or to conduct business there, or to lease or otherwise possess or acquire said premises or actively use said license in connection therewith.

A quota of six distilled spirits wholesaler's licenses had been established by the Board for Monterey County and License Number 2 was counted in calculating the number issued therein and was charged against said quota.

In petitioner's verified application for the license, Mr. Joseph George, petitioner's president, stated petitioner intended to conduct business at 124 Monterey Street, though this was not true. He offered as an explanation of this statement that "If our attorney thought it was procedural, I believed he didn't believe it should be left blank."

For the year July 1, 1954, to June 30, 1955, petitioner applied and paid for, and the Board issued and held a renewed license, in like manner as before, and for the year July 1, 1955 to June 30, 1956, petitioner applied to the Department for a further renewal and paid the required fee, but, though the Department held the fee, petitioner was not notified of its action on this application.

On or about January 3, 1955, Norman W. Finney filed with the Department the accusation initiating the proceedings which resulted in the revocation of petitioner's license.

On July 28, 1953, Baruh Liquors also applied for a distilled spirits wholesaler's license for the premises at 124 Monterey Street, this being a transfer of a license previously held by Baruh Liquors for 6 Central Ave., Salinas. This transfer was duly approved and the license issued and continuously since said issue a license covering said 124 Monterey Street has been held by Baruh Liquors, which has actually conducted its business there, the license being one of the quota of six established for Monterey County.

Mr. Joseph George never personally consulted with anyone

representing the Board on the specific question whether petitioner would be allowed to purchase and hold a second license in the city of Salinas or whether, in view of the fact that petitioner did not intend to keep a stock of liquor or conduct business at 124 Monterey Street, it would be lawful for it to own said License No. 2. It does not appear that anyone acting for petitioner had any representations on these subjects specifically made to him by anyone representing the Board. However, Mr. Jerry M. O'Brien testified that the holding of a license for record under the provisions of rule 65 was a uniform practice of the Board and had been such throughout the state for many years. He stated that other than rule 65 he knew of no written authority for such practice. He said he had discussed the matter with the legal counsel for the Board at Sacramento; that he knew of no written interpretation of rule 65 authorizing the practice, but that it had been his own interpretation that said rule permitted it, and that under this interpretation it would have been possible for any holder of a distilled spirits wholesaler's license in Monterey County to have bought up the entire quota of licenses for said county and have them held for record under rule 65 as inactive licenses as was done in petitioner's case.

Section 23778 of the Business and Professions Code reads: ''A distilled spirits wholesaler's license shall not be held by any person unless at all times throughout the license year he has on his wholesale premises a reasonable stock of distilled spirits, as determined by the department, for which he has fully paid lawful money or its equivalent.''

Section 23779 of the Business and Professions Code reads: ''No wholesale license shall be issued to any person who does not in good faith actually carry on or intend to carry on a bona fide wholesale business by sale to retail licensees of the alcoholic beverage designated in the wholesale license, and the department may revoke any wholesale license when the licensee fails for a period of 45 days actively and in good faith to engage in the wholesale business and shall revoke any distilled spirits wholesaler's license held by any person who fails to comply with applicable provisions of sections 23378, 23379, 23776, 23777 and 23778. Sale by a wholesale licensee to himself as a retail licensee is not the transaction of a bona fide wholesale business.''

Section 23781 of the Business and Professions Code reads: ''Not more than one distilled spirits manufacturer's license, or one rectifier's license, or one distilled spirits wholesaler's

license shall be issued to any one person in any one city.''

There was no attempt to comply literally with said sections 23779 and 23781 of the Business and Professions Code. We think license Number 2 was issued in violation of the plain provisions of said sections. The evidence is practically undisputed in support of the judgment and of the action of the Department in revoking said license. The argument of the appellant, however, is that the revocation resulted solely from what was at best a claimed technical violation of said sections; that there is no evidence or charge that petitioner was guilty of fraud or corrupt dealing; that every step taken by petitioner had the full approval and acquiescence of the Board; that the Board's interpretation of rule 65 permitting the holding of ''frozen'' or ''inactive'' or surrendered distilled spirits wholesaler's licenses was reasonable and within the authority of the Board; that said interpretation had been unchallenged for many years; that petitioner was never actually issued an effective license covering the premises in question; that the Department, as the successor of the Board, was without power to change or repudiate the long standing interpretation placed by the Board upon rule 65, particularly where petitioner relied upon such interpretation to its detriment; that because of the manifest injustice inherent in the action of the Department, the doctrine of equitable estoppel is applicable and should be invoked and that the interests of justice required reasonable notice to petitioner of the contemplated action of the Department to the end that petitioner might have been given an opportunity to dispose of the license or utilize it in connection with premises outside the city of Salinas.

In considering the appeal by petitioner from the decision of the Department, the Alcoholic Beverage Control Appeals Board held that compliance with section 23778 of the Business and Professions Code had been expressly waived by the Board, but that there had been a clear violation of sections 23779 and 23781 and petitioner had not been prejudiced by the Department's ruling that section 23778 had been violated. We are not called upon here to decide, and we express no opinion with respect to, the effect of section 23778. The judgment of the trial court held that sections 23779 and 23781 were violated and that under all the facts presented the revocation of petitioner's license was proper. It is with this judgment that we are concerned on this appeal.

Much of petitioner's position is based upon the contentions

that in promulgating rule 65, and interpreting said rule as permitting the practice testified to by Mr. O'Brien, the Board acted reasonably and within its powers to implement the statutes by regulations in aid of their purposes. ■ We find nothing in rule 65 which even faintly hints at justifying the granting of a second distilled spirits wholesaler's license to a licensee already holding one for premises in the same city or to a person who does not in good faith actually carry on or intend to carry on a bona fide wholesale business as provided by the statute. Sections 23779 and 23781 expressly and in clear, unmistakable, mandatory terms prohibit such issuance. Rule 65 deals with the surrender of licenses to the Board by licensees who have surrendered, abandoned or quit their licensed premises, or closed them for a period exceeding two weeks. ■ While it is true that where a statute needs construction, or implementation by rule or regulation, or where a valid rule requires interpretation, an administrative agency charged with its enforcement may reasonably furnish such construction or interpretation in aid of the purpose of the law, and that contemporaneous administrative construction is entitled to great weight and courts generally will not depart from it unless it is clearly erroneous or unauthorized, (*Coca-Cola Co.* v. *State Board of Equalization,* 25 Cal. 2d 918 [156 P.2d 1]) it is also firmly established that, ''Where there is no ambiguity and the interpretation is clearly erroneous, such administrative interpretation does not give legal sanction to a long continued incorrect construction.'' (*California Drive-In Restaurant Assn.* v. *Clark,* 22 Cal.2d 287, 294 [140 P.2d 657, 147 A.L.R. 1028] ; *Gunn* v. *State Board of Equalization,* 123 Cal.App.2d 283, 287 [266 P.2d 840].) ■ Rules of interpretation in conflict with the plain meaning of a statute are void. (*Hodge* v. *McCall,* 185 Cal. 330 [197 P. 86].)

In attempting to justify what the Board did for petitioner, it is argued that section 23781 does not prohibit the holding for record of licenses as was done in this case; that in enacting the section the Legislature did not attempt to define ''issue''; that the mere preparation of a license certificate in the name of petitioner, coupled with immediate surrender without delivery to the applicant, did not constitute issuance; that public policy and public welfare were neither subverted nor contravened by the rule or by the Board's interpretation of either the statute or rule 65. Substantially the same argument is advanced with respect to section 23779.

Our view is that the word "issue" is too clear in its meaning to require further definition and that the preparation of the license certificate in petitioner's name and acceptance of a concurrent surrender, the charging of a license fee, the recording of the license as held by or for petitioner and the counting of it against the quota for the county of Monterey, all done notwithstanding petitioner already had another license in Salinas and that it did not intend to conduct business at all at 124 Monterey Street, was clearly the issuance of a license in direct violation of both said sections. It is of no aid to say that the license was merely held "for record" or "inactive," or that the certificate was not physically possessed by the licensee. The question of issue or delivery of the license is one of intent where no physical possession of the certificate is transferred. Here petitioner paid a former licensee $25,000 for the license and in 1953-'54 and 1954-'55 paid the Board the required fees for the license and renewals and in 1955 tendered the renewal fee which was held without action by the Department, obviously pending the outcome of this litigation. The recommendation by Mr. O'Brien in 1953 was that the license *when issued* be held under rule 65 and the letter from petitioner's attorney to the Board in connection with the July, 1953 application stated that the license was *to be issued* for record only and to be held by the Board under rule 65. Intent is the controlling factor where constructive delivery of a document is in question and where the parties mean it to be operative without manual tradition, it is as fully effective as if physically passed from one to the other. It seems to us highly inconsistent to claim at one point that the license was never issued and, hence, sections 23779 and 23781 were not violated, and at another that a license issued to petitioner was surrendered upon its abandoning or quitting business at the licensed premises, and at still another that an injury was done to petitioner by the Department revoking its license. If the license was never issued, it never came into existence as such and there was nothing to revoke; petitioner had nothing to lose. We think the situation is, that the license was issued and constructively delivered; that petitioner acquired and enjoyed certain privileges thereunder, among them the "freezing" of one of the quota of six licenses established for Monterey County, thereby eliminating competition to some extent and affording petitioner the benefit of some control over the permission to do a wholesale liquor business in the county which might have been available to

another had it not been tied up by the method employed. The license having been issued and being used contrary to the express terms of the law, and petitioner claiming ownership, dominion and a measure of control over it, it was proper to adjudicate the validity or invalidity of it and of the interpretation placed upon rule 65 in handling it. The order of revocation as of its effective date, wiped out all right of any further exercise of the permission purportedly granted by the license.

In *Board of Trustees of Stanford University* v. *State Board of Equalization*, 1 Cal.2d 784 [37 P.2d 84, 96 A.L.R. 775], it was held to be the mandatory duty of the Board to revoke a license granted in direct violation of section 172a of the Penal Code.

To appellant's contention that the doctrine of equitable estoppel should be applied to prevent the revocation of its license, respondents reply that elements of equitable estoppel are lacking here; that petitioner comes into court with unclean hands, its president having verified a statement in the application that it intended in good faith to conduct business at 124 Monterey Street, known to be false, and that estoppel will not operate against the state so as to frustrate the purpose of its laws or thwart its public policy. ■ We agree that equitable estoppel should not be applied in this case.

There is no evidence that petitioner parted with the $25,000. paid to the Thanos Company because of anything said or done by the board or its agents. It may well have bargained for this license in the open market in reliance upon the ''common knowledge'' that this is done ''notwithstanding the necessity of the Board's approval,'' as was commented upon in *Mollis* v. *Jiffy-Stitcher Co.*, 125 Cal.App.2d 236 [270 P.2d 25]. True, it paid its license fees to the board in the hope and expectation that the license would be issued to and held for it, but this was done, so its hopes were not destroyed and it was not misled. Petitioner has been disappointed, perhaps, that the status of the ''inactive'' or ''frozen'' or ''surrendered'' license has not been permitted to remain stationary for an indefinite time, but the record is silent as to any representation, practice, custom or interpretation of guaranteeing to anyone a fixed or permanent status as a licensee. ■ Moreover, we think where one acts with full knowledge of plain provisions of law, and their probable effect upon facts within his knowledge, especially where represented by counsel, he can neither claim (1) ignorance of the true facts

or (2) reliance to his detriment upon conduct of the person claimed to be estopped, two of the essential elements of equitable estoppel. (*Safeway Steel Products, Inc.* v. *Lefever,* 117 Cal.App.2d 489 [256 P.2d 32] ; *Bear Creek Co.* v. *James,* 115 Cal.App.2d 725 [252 P.2d 723].) ██ ██ While the once strict rule against invoking equitable estoppel against the state or its agencies has been somewhat relaxed, so that government is now held in some instances to the same standards of rectitude as individuals (*Farrell* v. *County of Placer,* 23 Cal.2d 624 [145 P.2d 570, 153 A.L.R. 323]; *La Societe Francaise* v. *California Emp. Com.,* 56 Cal.App.2d 534 [133 P.2d 47] ; *Garrison* v. *State,* 64 Cal.App.2d 820 [149 P.2d 711] ; *Dettamanti* v. *Lompoc Union Sch. Dist.,* 143 Cal.App. 2d 715 [300 P.2d 78]) still it is the law that "neither the doctrine of estoppel nor any other equitable principle may be invoked against a governmental body where it would operate to defeat the effective operation of a policy adopted to protect the public" and that the government may not be estopped "so as to 'frustrate the purpose of its laws or thwart its public policy' " (*County of San Diego* v. *California Water etc. Co.,* 30 Cal.2d 817, 826 [186 P.2d 124, 175 A.L.R. 747].) To permit in this case the issuance of the license to have any continued validity or recognition against the clear expression of legislative purpose in sections 23779 and 23781 would definitely do violence to the doctrine stated in the case last cited. (See also *Taylor* v. *Spear,* 196 Cal. 709 [238 P. 1038] ; *Western Surgical Supply Co.* v. *Affleck,* 110 Cal.App. 2d 388 [242 P.2d 929].)

Since we hold that no estoppel arose, we deem it unnecessary to discuss or decide whether the "clean hands" doctrine applies here.

In advancing the argument that fair dealing and the interests of justice required that petitioner be given more notice and an opportunity to dispose of the license, petitioner admits that no specific authority has been found to sustain this point. Reference is made to *Reynolds* v. *State Board of Equalization,* 29 Cal.2d 137 [173 P.2d 551, 174 P.2d 4], wherein the board was upheld in suspending rather than revoking a license for a violation of a statute and it is argued that suspension was the most the Department should have imposed and that revocation was an abuse of discretion. We do not so view it. ██ It was a matter of discretion with the Department to revoke the license once it found that the continuance of it was contrary to law. The trial court had no

authority under the rules of mandamus to control that discretion. In *Board of Trustees of Stanford University* v. *State Board of Equalization, supra,* the court directed the Board to cancel the license, holding that to be proper. Thus no abuse occurred. While, as stated in the Reynolds case, the possibility of merely suspending the license was not considered in the Stanford case, still it stands as authority for revocation. Neither this nor the trial court may direct the Department how to act within discretionary bounds.

The judgment is affirmed.

Kaufman, P. J., and Dooling, J., concurred.