[Crim. No. 3422. In Bank.—June 30, 1931.]

THE PEOPLE, Respondent, v. W. S. J. RANNEY, Appellant.

Gumpert & Mazzera and Claude H. Hogan for Appellant.

U. S. Webb, Attorney-General, J. Charles Jones, Deputy Attorney-General, Guard C. Darah, District Attorney, and Ward A. Hill, Assistant District Attorney, for Respondent.

THE COURT.—A hearing was granted by this court in this case after decision by the District Court of Appeal in order to give further consideration to some of the matters discussed therein. The facts of the case, so far as it is necessary to recount them on this appeal, are as follows:

The defendant was charged with twenty-one counts of grand theft, and with having been twice previously convicted of a felony. Upon defendant pleading not guilty to the various charges of grand theft, a trial by jury was had, resulting in a conviction on seven of the counts charged in the indictment, the jury being unable to agree on the remaining counts. From the judgment so entered and from the order denying his motion for a new trial, defendant prosecutes this appeal.

Defendant contends that the trial court committed two major errors sufficiently prejudicial to require a reversal of the judgment.

In the first place, it is contended that defendant was improperly restricted by the trial court in his examination of prospective jurors in that the trial court prohibited defendant from asking prospective jurors certain questions as to whether the fact that defendant had been twice convicted of a felony would bias or prejudice them to the extent that they would be unable fairly to weigh the evidence given

by the defendant, as provided by law in such cases, in their deliberation upon the case.

In the second place, it is contended that the trial court committed reversible error in that it instructed the jury that it should bring in a verdict of guilty, if it should find that defendant *unlawfully* took the property involved. Defendant contends that an unlawful taking is not necessarily a felonious taking sufficient to constitute the crime of grand theft. These contentions will be discussed in order.

In reference to the first contention, the record shows the following facts:

During the *voir dire* examination of the jury, counsel for the defendant asked a prospective juror whether he knew that the defendant had previously served two prison terms. The trial court sustained the district attorney's objection to the question. The question, standing alone, was undoubtedly objectionable, for the reason that the defendant having admitted the prior convictions, the jury had no concern with them, except in so far as they might tend to impeach the defendant, if he should take the stand. There is nothing in the question to indicate what relevancy it had as to the juror's qualifications. Immediately thereafter, however, the following took place: Counsel for defendant explained to the court that the question was merely preliminary; that the defendant would take the stand in his own behalf; that he presumed the district attorney would bring out the fact of the prior convictions on cross-examination, for purposes of impeachment; that he desired to question the prospective jurors "as to whether or not they would regard an admission of those felonies as evidence in the case, and indulge in the presumption of guilt . . . that this is one of the most vital questions that has been propounded to the jury . . . It is only to show the extent of his bias and prejudice"; that what he wanted to determine was whether any juror will be biased or prejudiced by reason of the fact that "the defendant had been twice previously convicted of felony". After a question by the court, counsel for the defendant again stated: "We are asking to ascertain whether or not the jury, by reason of an admission on the part of the defendant of serving these two prior terms, would indulge in the presumption of guilt by reason of that fact alone. We can readily understand

that the outside layman might be influenced, might be induced even to the extent of arriving at a verdict in this case on the basis of a past, or past convictions, and we are entitled to go into that fact in order to determine whether or not they would." The court thereupon announced that the objection would be sustained. Counsel then asked if the court's ruling went "to the extent of prohibiting the defendant from questioning any or all of the jurors as to whether or not they would be influenced in their delibera- tions at all by a statement of admission of prior conviction of a felony?" To this the court answered: "That is correct."

It is our opinion that the refusal of the trial court to permit counsel for defendant to thus examine the prospec- tive jurors on this important question, involving their possi- ble bias or prejudice, while, if standing alone, might not justify a reversal of the case, yet, when taken with the errors in the instructions hereafter mentioned, is sufficient, in the circumstances of this particular case, to constitute reversible error. ■ In so holding, however, we do not approve the practice that is becoming increasingly prevalent in such cases of counsel, by stating the purpose for which a question will be asked, thus securing an advance ruling on whether such questions will be proper. The better prac- tice is to ask the direct question and thus secure a direct ruling on it. The rulings of the trial court should not be made in colloquys between itself and counsel as to how it would rule if the specific question were propounded. The trial court should refuse thus to rule in advance as to whether a specific question would be proper, if asked, and counsel should not be satisfied with anything less than a direct ruling on the question. (*Chicago City Ry. Co.* v. *Carrol*, 206 Ill. 318 [68 N. E. 1087]; *Columbia Investment Co.* v. *Alameda Lands Co.*, 87 Or. 277 [168 Pac. 64]; Wig- more on Evidence, 2d ed., 168, sec. 117.) However, under the circumstances of this case, we do not feel justified in holding that counsel is now precluded from making the point because he failed to propound the specific question. We will, therefore, treat the matter as if the proper ques- tions had been asked and objections had been sustained, as the record indicates that this would have been the trial court's ruling, had the questions been asked.

We are satisfied that the District Court of Appeal properly disposed of this question, and also the question as to the instructions involved. We, therefore, adopt as part of the opinion of this court, the following portions of the opinion of the District Court of Appeal, Third Appellate District, written by Mr. Justice *pro tem.* Shields:

 ██ "We think that this action of the court and this ruling was clearly erroneous. 'Nothing is better settled or more rational than that an indictment for one crime cannot be supported by proof of another.' (*People* v. *Carpenter,* 136 Cal. 391 [68 Pac. 1027].) It is not proper to show the defendant 'to have been guilty of some other offense for the purpose of raising a presumption either of law or fact, of his guilt in the case under consideration'. (*People* v. *Sears,* 119 Cal. 267 [51 Pac. 325].) 'When a person is accused of crime and placed upon trial, he cannot be required to defend himself against anything but the specific charge. He cannot be compelled under the rules of law to maintain the honesty and integrity of his entire life.' (*People* v. *Arlington,* 123 Cal. 356 [55 Pac. 1003]; 8 Cal. Jur. 58.)

"Evidence of other offenses than the one charged, except in exceptional cases not involved here, is incompetent as proof of the charge upon which an accused is on trial. If it gets before the jury by suggestion, or in connection with evidence otherwise competent, it must be disregarded by the jury, and the court, upon request, should definitely so instruct them. ██ Whether or not a prospective juror will be influenced by knowledge of any such previous offense, whether he will be governed by the rule of law which rigidly excludes such a consideration, and whether or not if chosen as a juror, he will obey an instruction by the court to dismiss from his mind all consideration of any separate and different offense of which he may have obtained knowledge in any way, except for purposes of impeachment, is a question of vital importance to an accused person in the circumstances of the defendant here.

"He is entitled to be tried by a fair and impartial jury, wholly free from bias or prejudice. Defendant knew that the fact of his previous convictions would be brought to the attention of the jury if they did not already know of it. He intended to be, and later was, a witness in his own be-

half. He had a right to expect that the prosecution would bring out the fact that he had been twice convicted of a felony for the purpose of impeaching him. The defense which he had planned, and later presented, was interwoven with this fact, and required its disclosure. He did not gratuitously introduce this fact to the jury's attention. There was no fact more fundamental to his defense than that he should select a jury which would not be biased by this fact, and regard it as evidence in the case from which they might find or presume his guilt of the charges upon which he was being tried. He had a right to inquire of the panel fully as to the existence of any such bias to enable him to secure his constitutional right of trial before a legally qualified jury."

· [The opinion here cites and quotes at length from *People v. Carmichael*, 198 Cal. 534 [246 Pac. 62], and from *People v. Hosier*, 132 App. Div. 146 [116 N. Y. Supp. 911] affirmed, 196 N. Y. 506 [89 N. E. 1107].]

"Other questions raised on this appeal relate to instructions given and refused. One instruction given by the court was erroneous, particularly so in the circumstances of this case. In it the jury was told: 'If the jury find to a moral certainty and beyond a reasonable doubt that the defendant W. S. J. Ranney did, at and in the County of ιSan Joaquin, State of California, and on or about the 20th day of July, 1926, *unlawfully* take the property of the Harris Manufacturing Company . . . it will be your duty to bring in a verdict of guilty of grand theft, a felony, as charged and set out in the first count of the indictment on file herein; otherwise you should acquit him on said first ·count.' A like instruction was read in reference to each of the remaining twenty counts of the indictment. This instruction did not define unlawful, it did not instruct the jury that before they could convict the defendant they must also have found that the 'taking' was felonious, or otherwise criminal. It made no reference to any distinction between what was criminally unlawful and civilly unlawful. Under the instruction they were to convict the defendant in either case.

█ "The jury were told twenty-one times by this instruction that if they found that the defendant *unlawfully* took the property involved that they should find him. guilty of the crime charged. But there are many acts of 'taking'

of property which are unlawful but are not criminal, and which would not justify a conviction of felony. Section 511 of the Penal Code illustrates this, wherein it provides that a certain appropriation of property is not criminal if made under a claim of title 'even though such claim is untenable', in other words, 'unlawful'. The law is so stated in *People* v. *Lapique,* 120 Cal. 25 [52 Pac. 40]. So in *People* v. *Ephraim,* 77 Cal, App. 29 [245 Pac. 769, 772], in a prosecution for embezzlement the court says that 'it was incumbent upon the appellant to prove that she had appropriated the money openly and avowedly, and under a claim made in good faith, but it was not necessary for her to prove that her claim was a valid one upon which she might recover in law'.

"Countless decisions might be cited to show that an act may be unlawful and not be penal. · (39 Cyc. 829.) The word unlawful in connection with a contract for the use of a machine, does not mean a criminal use, but any use in violation of the contract. (*Cortelyou* v. *Charles Even Johnson Co.,* 138 Fed. 110.) Unlawful in relation to the acts of a corporation may mean acts only *ultra vires.* (*Dunbar* v. *American Tel. & Tel. Co.,* 238 Ill. 456 [87 N. E. 521].) Unlawful is not synonymous with criminal. 'To speak of an act as unlawful is not equivalent to saying it has been denounced as a crime. Every criminal act is illegal or unlawful, but illegal or unlawful acts may not be criminal.' (*State* v. *Tinkler,* 72 Kan. 262· [83 Pac. 830].) So the use of the word 'unlawfully' in an instruction relative to embezzlement will not supply the place of the word feloniously or fraudulently. 'Many things are unlawfully done which are not crimes because the criminal intent is wanting.' (*State* v. *Cunningham,* 154 Mo. 161 [55 S. W. 282].) When the broad meaning of the word 'unlawful' is thus understood, the error of an instruction which directs the jury to convict upon the mere finding that the defendant had committed an unlawful act, is very apparent.

"The instruction complained of here was particularly inappropriate to the facts of this case, which in the briefest way and according to the testimony of the defendant were these. Defendant was acting as manager of the Harris Manufacturing Company. He sold some $83,500 worth of preferred stock which at the time stood in the name

of four of the directors of the company, the sale being made in the interest of and for the benefit of the company. These four directors individually promised and agreed to pay him for his services in selling the stock a commission of 15 per cent, which was to be paid out of the funds of the company, from time to time, as the finances of the company might permit. The four directors required, however, that the money was to be taken without the knowledge of the remaining director, a Mr. Henry. The sums taken as specified in each of the seven counts upon which he was convicted, as defendant testified, were part of this 15 per cent commission which he had been so authorized to withdraw. Defendant relied upon this authority, as he claimed it to exist, to justify his admitted taking of the money. It was the theory of the prosecution that the four directors never made any such promise, and that it would have been an unlawful transaction had they done so. The real question before the jury in such a state of the evidence and in finding upon each of the counts in the indictment was as to whether or not the defendant fraudulently and with a felonious intent appropriated the money as charged in the respective counts. It will be readily seen that if the four directors promised the defendant the 15 per cent commission and told him to take it as he did, even if they had no legal right to make such promise or to authorize such taking, if the defendant believed that they had, and acting upon such claimed authority, he took the money in good faith, he would clearly be committing no crime. But his taking would have just as clearly been 'unlawful'; and the jury were instructed to convict him if the taking were unlawful.

 "So stated, the error in the instruction is obvious. It is contended, however, that other instructions given in connection with the one now in question, supplied the deficiencies, and together with it, completed a fair presentation of the law. It is doubtful if any separate or detached instruction could be held to have cured the error in this instruction, given at the end of the charge, and twenty-one times repeated. It contains a definite direction, upon the finding of a certain fact, to find the defendant guilty. 
It is the rule that in the case of instructions which so direct a conviction, the instruction must state all of the conditions necessary to a legal conviction, which this instruction ad-

mittedly did not. ▪But waiving these considerations, the qualifying instruction relied upon by the respondent is insufficient for that purpose. The greater portion of this latter instruction (p. 1652, vol. 5, Reporter's transcript) is practically in the terms of section 511, Penal Code. By it the jury was told that if a person in converting property to his own use does so under a *bona fide* claim of title thereto, he is not guilty of the crime of grand theft, although his claim of title was not good. Continuing, the court further instructed: 'If you find . . . that the defendant appropriated property owned by the Harris Manufacturing Company, and by said company entrusted to said defendant, and the defendant laid claim to the property so appropriated, such claim of title, if preferred in good faith, is a sufficient defense, even though the claim is untenable.'

"So far this instruction is a correct statement of the law, and directly applicable to the facts of this case. It so far differs from the instruction in which the jury were told that if they found that the defendant 'unlawfully' took the sums mentioned in the various counts of the indictment, that they should convict him, as to tell them that even if his claim of title to the property 'was not good' or 'untenable', if made in faith, that they should not convict him. Whether or not this instruction so far supplied the deficiencies of the first instruction, and limited the force of the specific direction to convict the defendant, if the jury found that he had 'unlawfully' taken the sums withheld, we do not have to decide, for reasons which we will briefly discuss. At the end of and concluding this instruction the court said: 'But this provision would not excuse the *unlawful* retention of the property of the Harris Manufacturing Company to offset or pay demands held against it by defendant.' This concluding part of the instruction should not have been given; there is no theory of the case to which it is appropriate. The prosecution contended that the defendant took the sums mentioned in the different counts of the indictment without any right or authority whatever. Defendant contended, not that he retained the money appropriated by him to pay any debt or claim which he had against the company, but that he took it as provided in the first portion of the above instruction, and as provided in section 511 of the Penal Code, under a claim of title to it,

and in pursuance of a definite direction of four of the directors of the company, instructing him to do so.

"Ordinarily the giving of an irrelevant instruction is of no consequence in a case, and the giving of this portion of the instruction given here would not constitute error in itself. But in this case it could not fail to have misled the jury. There having been no theory of the case to which it was appropriate, the jury might quite properly have taken it as having been given as applicable to the facts of the case they were considering. So understood the jury were told, substantially, by the first portion of the instruction that if the defendant took the property under claim of right, and in good faith although *unlawfully* he should be excused, and in the second and concluding portion, that if he retained the property *unlawfully,* he should not be excused. Such an instruction so confused and apparently contradictory cannot be held to have explained and properly qualified the direct instruction first above mentioned, to convict the defendant if the jury found that he took the property in question *unlawfully.* Other instructions relied upon to supplement and qualify the instruction first above mentioned need not here be referred to. It is enough to say that in no portion of the charge was the jury told that the taking, or retention of the money mentioned in the indictment, must, in any aspect of the case, have been fraudulent or felonious before the defendant could have been convicted. (*State* v. *Cunningham,* 154 Mo. 161 [55 S. W. 282].)"

While we approve the foregoing discussion, as applied to the facts of this case, we do not mean to hold that in every case such an instruction would constitute reversible error. We have grave doubts as to whether, in a case where the defendant denied having taken the property, either unlawfully or feloniously, but, if the taking, if proved, would necessarily constitute a felonious taking, error could be predicated on such an instruction. But, in this case, as already pointed out, defendant's defense was that the taking was unlawful, but not felonious.

▆ Respondent contends that the defendant is precluded from claiming that the giving of the instructions complained of constituted error, for the reason that defendant offered twenty-one instructions in substantially the same form. Respondent relies on the well-settled rule that where a

defendant offers an instruction he is precluded from basing error thereon. However, that rule has no application to the facts of this case, for the reason that the instructions offered by defendant were radically different from those given by the trial court. The instructions offered by the defendant were to the effect that if the jury found *that the money was not unlawfully taken they should acquit the defendant.* The instructions given, as already pointed out, were the converse of these instructions, namely, *if the money was unlawfully taken then the jury must find defendant guilty.* The instructions offered by defendant, although not as apt as could be drawn, state a correct principle of law; the instructions as given, as already pointed out, under the facts of this case, state an erroneous principle of law. There is no merit in this contention.

The judgment and order appealed from are reversed.