[Civ. No. 5833.   Fourth Dist.   July 28, 1958.]

CLAUDE SHARPENSTEEN, Respondent, v. HERBERT HUGHES, as Sheriff, etc., Appellant.

*Assigned by Chairman of Judicial Council.

Arthur L. Lockie, District Attorney (Imperial), Frank Traviss and Rigmor B. Cope, Deputy District Attorneys, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, Arlo E. Smith and Richard S. L. Roddis, Deputy Attorneys General, as Amici Curiae on behalf of Appellant.

M. M. Cline and Archibald M. Mull, Jr., for Respondent.

Walter C. Fox, Jr., W. Burleigh Pattee, Bruce M. Casey, Jr., and Chickering & Gregory, as Amici Curiae on behalf of Respondent.

GRIFFIN, J.—As a result of a claim and delivery action filed by plaintiff-respondent against defendant-appellant Herbert Hughes, individually and as sheriff of Imperial County, the trial court ordered the return to plaintiff of four so-called coin-operated pinball machines (Exhibits G, H, K and L) and their contents, gave judgment for damages for retention for $576, and ordered defendant to pay his costs of suit. From this portion of the judgment and order defendant appeals. It was further ordered that four other machines (Exhibits E, F, I and J) be confiscated and destroyed under sections 330b and 330.1 of the Penal Code, together with the money therein contained. There is no appeal from this latter portion of the judgment.

By court order, R. F. Jones and Company, a corporation, a manufacturer of so-called amusement devices known as pinball machines, through its attorneys was, as amicus curiae allowed to file a brief in this action predicated upon its interest in an action pending wherein the State Franchise Tax Board assessed certain additional taxes against it, contending such owner was, by the mere possession and sale of such machines, engaged in an ''illegal activity,'' and that the decision in this case would accordingly affect the decision in that action. A similar request by the attorney general, who appeared in that case, was granted. The defendant thereafter, by answer, admitted seizing nine pinball machines found in the possession of plaintiff on April 19, 1956. He alleged they were slot machines or devices prohibited by sections 330b and 330.1 of the Penal Code and that their seizure was lawful under sections 330.4 and 335a of the Penal Code. It was stipulated

that one machine, "Williams Race the Clock," was only a game of skill and it was returned to plaintiff. The remaining eight were the subject of the trial.

The court found that these were all of a general type commonly known as pinball machines, indicating "free games" when certain scores were obtained and it found that each was predominantly a game of chance. The specific finding was that "All of the machines in question are of the *general type commonly known as pinball machines*, consisting of a table on legs, the table being in the shape of a rectangular box with a glass top, slightly elevated at the back. Inside the box is a surface studded with pins, plugs, springs, buffers, and holes. Upon the insertion of a coin, a specified number of balls are released which can be projected onto this surface by means of a plunger, after which the ball wends its way from the top toward the bottom. In its journey it may fall into any one of a number of holes or find its way out through the bottom hole for replay. It may likewise hit one or more of the springs, pins, or plugs, thereby on occasion lighting up certain figures and registering various scores on a perpendicular board at the head of the machine. When certain scores are obtained 'free games' are indicated." (Italics ours.) It then found that four of these machines were actually used in gambling, prior to their seizure by the sheriff, and that he had a right to seize and claim their contents, and no argument is presented in this respect. It found the other four were so constructed as to award "free games," and although predominantly games of chance, were not being used for gambling. They were ordered returned to plaintiff and damages were awarded for their detention.

The court's judgment in respect to these last four machines was based on the following conclusions of law: (1) "The possession of the pinball machines involved in these cases, although predominantly games of chance, is not prohibited by the provisions of section 330b (1) and (2) or of sections 330.1 and 330.4 of the California Penal Code. (2) The Legislature did not intend by its enactment of the above sections to prohibit the mere possession of what is commonly known as pinball machines in the absence of their use for gambling. (3) Section 330b (4) of the Penal Code exempts pinball machines from the prohibition of Penal Code sections 330b (1), (2), and (3); and section 330.5 of the Penal Code exempts pinball machines from the prohibition of sections 330.1-4 of this Code."

The provisions of the sections applicable are section 330b:

Subdivision (1): "It is unlawful for any person to . . . own . . . possess, . . . any slot machine or device as hereinafter defined, . . ."

Subdivision (2): "*Definition of Slot Machine.* Any machine, apparatus or device is a slot machine or device within the provisions of this section if it is one that is adapted . . . for use in such a way that, as a result of the insertion of any piece of money or coin or some other object . . . such machine or device is caused to operate or may be operated, and by reason of any element of hazard or chance or of other outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money . . . or additional chance or right to use such slot machine or device. . . ."

Subdivision (4): "*Games of Skill.* It is expressly provided that with respect to the provisions of Section 330b only of this code (re possession), pinball, and other amusement machines or devices which are predominantly games of skill, whether affording the opportunity of additional chances or free plays or not, are not intended to be and are not included within the term slot machine or device as defined in said Section 330b of this code."

Section 330.1 provides in part: "Every person who . . . possesses . . . any slot machine or device as hereinafter defined . . . is guilty of a misdemeanor." That section also redefines a slot machine as a device within the meaning of sections 330.1 to 330.5, inclusive.

Section 330.4 reads in part: "*Slot Machines and Devices; Possession or Control;* . . .

"It is specifically declared that the mere possession or control, . . . of any slot machine or device, as defined in Section 330.1 of this code, is prohibited . . ." That section makes the machine subject to confiscation, and the offense punishable as a misdemeanor."

Section 330.5 provides: "It is further expressly provided that Sections 330.1 to 330.4, inclusive, of this code shall not apply to music machines, weighing machines and machines which vend cigarettes, . . . in which there is deposited an exact consideration and from which in every case the customer obtains that which he purchases; it is further expressly provided that with respect to the provisions of Sections 330.1 to 330.4 inclusive, only, of this code, pin ball, and other amusement machines or devices which are predominantly games

of skill, whether affording the opportunity of additional chances or free plays or not, are not intended to be and are not included within the term slot machine or device as defined within Sections 330.1 to 330.4, inclusive, of this code.''

In support of the court's conclusions and judgment, plaintiff cites a statement in the Assembly Daily Journal dated April 4, 1950, signed by Assemblymen Ralph M. Brown and Thomas W. Caldecott, as follows:

''With respect to Assembly Bill No. 1 and Assembly Bill No. 34, for the purpose of establishing legislative intent and to guide the Members of the Legislature in acting on them, we desire to state that the intent of these bills is to make illegal the possession of the so-called slot machines in their various forms and we do not intend to prohibit possession of what is commonly known as a pinball machine.'' (See also, Legislative History, Assembly Daily Journal, April 4, 1950, page 760; and Senate Journal, 1st Ex. Sess. pp. 129-130.)

Plaintiff concedes, as he must, that the machines in question are included within the definition of ''slot machine or device'' set forth in sections 330b and 330.1, *supra.* The point at issue is whether they are excepted from the effect of these sections by the provisions of section 330b, subdivision (4) and section 330.5, *supra.* The exception provisions are ''pin ball, and other amusement machines or devices which are predominantly games of skill, whether affording the opportunity of additional chances or free plays or not.''

It is plaintiff's and amicus curiae Jones Company's claim that by the use of the comma after the words ''pin ball,'' it excepted all pinball machines from its application, regardless of whether they are games of skill or games of chance, as long as games of chance are not used for gambling; that as a matter of correct grammar, the Legislature should have used the term ''pinballs'' rather than ''pin ball'' to conform to the plural verb ''are'' used in the statute, and that this omission was but an inadvertence. It is then claimed that to give it the construction advanced by the attorney general, it would be necessary to strike out the words ~~"pinball, and other~~ amusement machines or devices which are predominantly games of skill,'' or that by striking out the comma after the words ''pin ball'' the exception would cover pinball machines and other amusement machines or devices which are predominantly games of skill. Under any claim, it must be conceded that no suggested construction is wholly convincing. If plaintiff's

interpretation is correct, and it is not unreasonable under the language used, then the exception applies to the possession of *all* pinball machines not otherwise prohibited by law, whether or not free plays are provided. Under this interpretation the order of the trial court, in respect to these four machines here involved, would be authorized. Apparently, these machines were found to be games of chance by reason of the fact that they afforded the opportunity of additional chances or free plays. It would therefore appear, as applied to mere possession, under sections 330.1 to 330.4 inclusive, that where such devices or pinball machines are predominantly games of skill, whether or not they afford the opportunity of additional chances of free play, are not included in the term "slot machine or device" as defined in those sections. This construction is in keeping with the declared legislative intent of the authors of said legislation, approved by the Assembly for publication in the Assembly Daily Journal to the effect that it was intended thereby to make illegal the possession of the slot machines but did not intend to *prohibit possession of what is commonly known as a pinball machine.*

■ It has been held that expressions of the legislative intent of the Legislature is an aid to proper statutory interpretation. (Code Civ. Proc., § 1859; *San Francisco* v. *Industrial Accident Commission,* 183 Cal. 273, 279 [191 P. 26]; *People* v. *Earl,* 19 Cal.App. 69, 71 [124 P. 887]; *Old Homestead Bakery, Inc.* v. *Marsh,* 75 Cal.App. 247 [242 P. 749]; *Sato* v. *Hall,* 191 Cal. 510, 519 [217 P. 520]; 70 A.L.R. 5, 19, 36-37.) ■ ■ It appears to us that the more reasonable construction of the exception would be that it was intended thereby that the mere possession of pinball machines and *other* amusement machines or devices (indicating pinball machines, as such, are designed for amusement) which are predominantly games of skill, whether affording the opportunity of additional chances or free play, come within the exception.

While the trial court did find that these particular machines were predominantly games of chance due to the fact that the users could secure additional chances or rights to use such machines, it also found they were "*of the general type commonly known as pin ball machines,*" and so described them.

Apparently one such machine, which did not provide for a free game or additional chances, was returned because it was stipulated it was a game of skill. Four of the others which

were confiscated were, as found by the court, used in gambling. No appeal was taken from these orders.

We conclude, in support of the trial court's order returning these machines, after applying the exceptions, such machines were predominantly games of skill, and the exception, insofar as mere possession alone is concerned, would be applicable.

Appellant's counsel and counsel amicus curiae, have given us the benefit of an exhaustive search of authorities in respect to the evils of gambling in general and the possible interpretations of the sections notwithstanding the declaration of legislative intent. We feel that the intent of the Legislature in enacting such laws should be considered if the legislative act can be reasonably construed in accordance therewith. ■ A statute setting forth certain acts as constituting a criminal offense and providing for confiscation of property for its violation should be specific and not open to doubt, and when language which is reasonably susceptible of two constructions is within a penal law, ordinarily that construction which is more favorable to the offender will be adopted. (*People* v. *Ralph*, 24 Cal.2d 575, 581 [150 P.2d 401].)

As thus interpreted, the constitutionality of the act is supported by competent authorities and the judgment of the trial court returning the four machines in question, rendering judgment for their detention, and that defendant bear his own costs, was authorized. (*Atlas Finance Corporation* v. *Kenny*, 68 Cal.App.2d 504 [157 P.2d 401]; *Chapman* v. *Aggeler*, 47 Cal.App.2d 848 [119 P.2d 204]; *Bacon Service Corp.* v. *Huss*, 199 Cal. 21, 33 [248 P. 235]; *County of Los Angeles* v. *Eikenberry*, 131 Cal. 461, 468 [63 P. 766]; *Max Factor & Co.* v. *Kunsman*, 5 Cal.2d 446, 468 [55 P.2d 177]; *People* v. *Busick*, 32 Cal.App.2d 315, 320 [89 P.2d 657].)

The portion of the judgment from which this appeal has been perfected is affirmed.

Mussell, Acting P. J., and McCabe, J. pro tem.,* concurred.

A petition for a rehearing was denied August 22, 1958, and appellant's petition for a hearing by the Supreme Court was denied September 24, 1958.

---

*Assigned by Chairman of Judicial Council.