[Civ. No. 21404. First Dist., Div. One. Nov. 1, 1963.]

PECK'S LIQUORS, INC., Petitioner, v. THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO, Respondent; GEORGE J. KAPLANIS, Real Party in Interest.

P. M. Barceloux, Burton J. Goldstein and Goldstein, Barceloux & Goldstein for Petitioner.

No Appearance for Respondent.

Irvin Goldstein for Real Party in Interest.

BRAY, P. J.—Petition for writ of prohibition, mandamus, certiorari, or other writ, seeking to prohibit the superior court from enforcing an order requiring answers to certain questions in the taking of depositions.

QUESTIONS PRESENTED.

1. Is the petition proper?

2. Are petitioner's witnesses subject to prosecution under the Alcoholic Beverage Control Act and therefore justified in

refusing to answer on the ground of possible self-incrimination? This requires a determination of whether selling alcoholic beverages at less than the listed price is a crime.

RECORD.

George J. Kaplanis, real party in interest, commenced an action in the San Francisco Superior Court against Peck's Liquors, Inc., in which in his amended complaint he charged the latter under chapter 10 of the Alcoholic Beverage Control Act (Bus. & Prof. Code, §§ 24749-24757) with damaging him by selling alcoholic beverages at retail at less than the applicable fair trade prices and demanded judgment for $50,000 and additional sums after an accounting. Defendant answered, denying the material allegations of the amended complaint. Thereafter the deposition of Maurice T. Peck, the executive vice president and secretary-treasurer of Peck's Liquors, and the depositions of certain named employees were taken. During the course of these depositions the witnesses refused to answer certain questions on the ground that the answers to said questions were incriminating or might tend to incriminate them. Thereupon plaintiff moved the superior court for an order compelling said witnesses to answer said questions. That court determined that the answers to said questions could not be incriminating and ordered the witnesses to answer. This proceeding is brought to prevent the enforcement of said order.

### 1. THE PETITION IS PROPER.

The petition prays for certiorari, prohibition, mandamus or other appropriate writ. ■ When a pleader is in doubt as to the type of writ he should seek it is proper to state his prayer in the alternative form, as petitioner has done here. (3 Witkin, Cal. Procedure, § 71, p. 2567.) "[T]he cases uniformly follow the modern principle of pleading that neither mislabeling nor a defective prayer will bar relief justified by proper allegations and proof." (*Idem*, § 71, p. 2568; see also § 72, pp. 2568-2569.)

■ When, in discovery proceedings, the trial court issues its order requiring answers to questions propounded, a petition for writ of prohibition is a proper remedy by which a petitioner may seek review of the propriety of that order. (*Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 185 [23 Cal.Rptr. 375, 373 P.2d 439].)

■ When a party seeks to gain information from a witness by way of deposition, the deponent need not give out

any privileged information. (Code Civ. Proc., § 2016, subd. (b).) ■ If the witness is asked any question the answer to which may tend to incriminate him, the answer is privileged and may not be inquired into. (Cal. Const., art. I, § 13.)

■ Therefore, if the trial court issues an order compelling a witness to answer an allegedly incriminating question, the propriety of that order may be reviewed upon application for a writ of prohibition, the same as if the court ordered the witness to give answers which would violate the attorney-client privilege.

### 2. INCRIMINATION.

It is conceded that the determination of the right to compel the answers rests upon the decision of two issues presented to the trial court and to this court, namely: (a) Is the sale of alcoholic beverages at less than the applicable listed prices a crime? (b) Is a witness exempt under the constitutional provision from testifying to an offense which, as to him, is barred by the statute of limitations?

(b) *Statute of Limitations.*

■ Answering the second question first, it is clear that if the offense or offenses as to which the answers of a witness might incriminate him, is or are barred by the statute of limitations, he may not refuse to answer on the ground of possible incrimination. "If, at the time of the transactions respecting which his testimony is sought, the acts themselves did not constitute an offense, or, if, at the time of giving the testimony, the acts are no longer punishable; if the statute creating the offense has been repealed, if the witness has been tried for the offense and acquitted, or, if convicted, has satisfied the sentence of the law; *if the offense is barred by the statute of limitations,* and there is no pending prosecution against the witness, he cannot claim any privilege under this provision of the constitution, since his testimony could not be used against him in any criminal case against himself, and consequently he is not compelled to be a witness 'against himself.' " (*Ex parte Cohen* (1894) 104 Cal. 524, 528 [38 P. 364, 43 Am.St.Rep. 127, 26 L.R.A. 423], italics added; see also *Rebstock* v. *Superior Court* (1905) 146 Cal. 308, 313 [80 P. 65]; *People* v. *McCormick* (1951) 102 Cal.App.2d Supp. 954, 963 [228 P.2d 349]; and *Brown* v. *Walker* (1896) 161 U.S. 591, 598 [16 S.Ct. 644, 40 L.Ed. 819], where the court states, "...if a prosecution for a crime, concerning which the witness is interrogated, is barred by the statute of limitations, he is compellable to answer. [Citations.]")

The violations of the Alcoholic Beverage Control Act charged in plaintiff's complaint are alleged to have occurred from December 22, 1959, to April 3, 1962. This action was filed April 12, 1962. Petitioner contends that the acts with which it is charged could be violations of sections 24750-24757, Business and Professions Code, and that such violations would constitute misdemeanors. (Bus. & Prof. Code. § 25617.) If Business and Professions Code section 24206 applies, the statutory limitation for violation of any of those sections is one year. Real party in interest contends that the violations concerning which he desires to interrogate petitioner's witnesses are not criminal offenses under the Alcoholic Beverage Control Act.

Assuming the violations would constitute misdemeanors, petitioner's witnesses' protection against incriminating answers could only apply to acts occurring within one year of the time when the individuals are called upon to answer. As more than one year has elapsed since the date of the last charged violation, the statute of limitations has run as to any possible misdemeanor charges, and the witnesses therefore can be compelled to answer as to acts which might constitute misdemeanors. However, petitioner contends that the witnesses could be prosecuted under section 182, Penal Code, for conspiracy to commit a crime, which would constitute a felony, the limitation for which would be three years. Therefore, they could not be required to answer questions concerning any acts occurring within three years of their answering. This contention requires our determination of the question of whether the charged violations constitute misdemeanors which could be a basis for a charge under section 182, subdivision 1, Penal Code (conspiracy to commit a crime) and under subdivision 5 (conspiracy to commit an act injurious to public morals).

(a) *Selling at less than listed prices.*

This brings us to the first question, namely, is the selling of alcoholic beverages at less than the applicable listed prices a crime?

Section 23001, Business and Professions Code[1] as amended in 1953, provides: "This division is an exercise of the police powers of the State for the protection of the safety, welfare, health, peace, and morals of the people of the State, to elimi-

---

[1]All code references are to the Business and Professions Code unless otherwise indicated.

nate the evils of unlicensed and unlawful manufacture, selling, and disposing of alcoholic beverages, and to promote temperance in the use and consumption of alcoholic beverages. It is hereby declared that the subject matter of this division involves in the highest degree the economic, social, and moral well-being and the safety of the State and of all its people. All provisions of this division shall be liberally construed for the accomplishment of these purposes.''

Section 24749, adopted in 1961, provides: ''It is the declared policy of the State that it is necessary to regulate and control the manufacture, sale, and distribution of alcoholic beverages within this State for the purpose of fostering and promoting temperance in their consumption and respect for and obedience to the law. In order to eliminate price wars which unduly stimulate the sale and consumption of alcoholic beverages and disrupt the orderly sale and distribution thereof, it is hereby declared as the policy of this State that the sale of alcoholic beverages should be subjected to certain restrictions and regulations. The necessity for the enactment of provisions of this chapter is, therefore, declared as a matter of legislative determination.''

Section 24750 reads: ''No contract relating to the sale or resale of any alcoholic beverage which bears, or the label or container of which bears, the trade-mark, brand, or name of the producer or owner of the alcoholic beverage and which is in fair and open competition with alcoholic beverages of the same general class produced by others violates any law of this State by reason of either of the following provisions which may be contained in such contract: (a) That the buyer will not resell the alcoholic beverage except at the price stipulated by the vendor. (b) That the producer or vendee of the alcoholic beverage require, upon the sale of the alcoholic beverage to another, that the purchaser agree that he will not, in turn, resell except at the price stipulated by the producer or vendee.''

Section 24752 reads: ''Wilfully and knowingly advertising, offering for sale, or selling any alcoholic beverage at less than the price stipulated in any contract entered into pursuant to this chapter, *or in any effective minimum retail price schedule filed with the department pursuant to section 24755,* whether the person so advertising, offering for sale, or selling is or is not a party to the contract, is unfair competition and is actionable at the suit of any person damaged thereby.'' (Italicized portion was added in 1961 by amendment.)

Section 24755 prior to its amendment in 1961 provided: "All distilled spirits sold at retail shall be, and any other alcoholic beverage may be, sold pursuant to a contract executed pursuant to this chapter, except that Chapter 11 shall govern the sale of wine in all cases in which that chapter is applicable. No licensee shall violate any of the provisions of any such contract."

Pursuant to this section the department adopted rule 99, which substantially was included in the 1961 amendment to section 24755, which reads in pertinent part:[2] "(a) No package of distilled spirits which bears the brand, trademark or name of the owner or person in control shall be sold at retail in this State for consumption off the licensed premises unless a minimum retail price for such package first shall have been filed with the department in accordance with the provisions of this section.... (d) ... No retailer shall sell any package of distilled spirits as a loss leader. 'Loss leader,' as used in this section, means a sale below cost as such cost is defined in sections 17026 to 17029, inclusive, of this code, except that a sale below cost made under the provisions of section 17050 of this code shall not be deemed a loss leader sale. The department shall reject any price schedule which does not comply with this subdivision. (e) No offsale licensee shall sell any package of distilled spirits at any price less than the effective filed price of such package unless written permission is granted by the department for good cause shown and for reasons not inconsistent with this division...."

These changes in the provisions of section 24755 are not significant, as at all times the selling of packaged distilled spirits at less than the listed price was and is prohibited.

Section 24756 reads: "Every distilled spirits manufacturer, brandy manufacturer, rectifier, and wholesaler shall file and maintain with the department a price list showing the prices at which distilled spirits are sold to retailers by the licensee. Sales of distilled spirits to retailers by each distilled spirits manufacturer, brandy manufacturer, rectifier, and wholesaler shall be made in compliance with the price list of the licensee on file with the department."

Section 24757 reads: "The department may adopt such rules as it determines to be necessary for the administration of sections 24754 to 24756, inclusive, *and shall take such*

---

[2] As the violations are alleged to have occurred from December 22, 1959, to April 3, 1962, it is necessary to set forth any changes, during that time, in the statutes herein involved.

*steps as may be necessary to enforce the provisions of such sections and the rules adopted by it for the administration thereof."* (Italicized portion was added by amendment in 1961.)

Section 25617 reads: "Every person convicted for a violation of any of the provisions of this division for which another penalty or punishment is not specifically provided for in this division is guilty of a misdemeanor and shall be punished by a fine of not more than five hundred dollars ($500) or by imprisonment in the county jail for not more than six months, or by both such fine and imprisonment."

The petitioner contends that a violation of *any* of the provisions of division 9 of the Business and Professions Code is a misdemeanor within the meaning of section 25617. Therefore, a violation of section 24752 by selling alcoholic beverages at less than the applicable listed prices is a misdemeanor and punishable in accordance with section 25617.

Contrariwise, the real party in interest argues that the legislative intent in section 25617 is to limit the application of that section to those statutory provisions in division 9 which denominate certain acts as misdemeanors and in which no specific penalty is provided.

 The question raised herein has not been decided by the appellate courts of this state. However, dictum in the case of *Allied Properties* v. *Department of Alcoholic Beverage Control* (1959) 53 Cal.2d 141 [346 P.2d 737], may be construed to support petitioner's position and is persuasive as to the proper interpretation of section 25617. This case dealt with the revocation of the plaintiff's license for a violation of sections 55.5, 55.6 and 55.65 of the Alcoholic Beverage Control Act (now Bus. & Prof. Code, §§ 24750-24757, 24850-24881, advertising to sell at retail wine and distilled spirits at less than the listed prices). The sole question raised in the case was whether the provisions were constitutional. The court held the provisions of the act to be constitutional. In its discussion of the act, the court said, among other things: "Further, a rule of the department provides that a violation of its rules and regulations by a licensee will be deemed contrary to public welfare and morals and grounds for suspension or revocation of a license. (Cal. Admin. Code, tit. 4, § 1.) *Although no criminal prosecution is involved here, it should be noted that the act contains a general provision, applicable to prohibited sales of alcoholic beverages, that violations for which another penalty is not specifically provided*

*in the act constitute misdemeanors punishable by a fine, a jail term, or both.* (Alcoholic Beverage Control Act, § 65, now Bus. & Prof. Code, § 25617)'' (P. 146; italics added.)

The court stated further: ''The Alcoholic Beverage Control Act states that it was enacted 'for the protection of the safety, welfare, health, peace, and morals of the people of the State to eliminate the evils of unlicensed and unlawful manufacture, selling, and disposing of alcoholic beverages, and to promote temperance in the use and consumption of alcoholic beverages.' (Alcoholic Beverage Control Act, § 1, now Bus. & Prof. Code, § 23001.)'' (Pp. 147-148.)

■ Also important in this regard is language written by Justice Peters in his dissenting opinion, as follows: *''The Penalty:* The penalties for a breach of the Fair Trade Acts are civil, only, giving to the injured party the right to damages or an injunction. The penalty [*sic*] for the breach of the price fixing regulations of the Alcoholic Beverage Control Act are both civil (Bus. & Prof. Code, § 24752) and penal, and the department may suspend or revoke licenses, or institute criminal action (see majority opinion).'' (P. 154.)

■ From the foregoing, it appears that the Supreme Court is of the opinion that since the Alcoholic Beverage Control Act was enacted for the purpose of protection of the safety, welfare, health, peace and morals of the people of this state (§ 23001), a violation of any of the regulatory provisions relating to prohibited sales constitutes a misdemeanor within the meaning of section 25617.

■ Further, since such policy has been determined by the Legislature, it is clear that if petitioner's witnesses did violate the provisions of the Alcoholic Beverage Control Act in question, they could be convicted of a conspiracy under either subdivision 1 or 5 of section 182, Penal Code, which provide that '' [i]f two or more persons conspire: 1. To commit any crime. . . . 5. To commit any act injurious to the public health, to *public morals,* or to pervert or obstruct justice, or the due administration of the laws,'' they are punishable in accordance with the punishment provisions of that section (imprisonment in the county jail, or in the state prison, or by fine, or by both fine and imprisonment). (Italics added.)

Sections 24752 and 24755 do not provide that violations thereof shall be misdemeanors nor do they expressly provide that violations shall constitute crimes or offenses punishable as such. In construing section 25617, providing penalty for violation of the provisions of division 9, where penalty is not

specifically provided for, the question arises as to whether the section was intended to apply only to provisions which expressly make a violation a misdemeanor but do not provide the punishment therefor or also to provisions which while prohibitive do not expressly provide that the violation is a misdemeanor or a crime.

There are a number of sections of the Alcoholic Beverage Control Act which make violations thereof misdemeanors but do not state the penalty therefor. There are other sections which make violations misdemeanors and specify the penalties therefor; and there are other sections such as those with which we are concerned here, sections 24750 through 24752, which prohibit violations but do not characterize such violations as misdemeanors and do not provide penalties therefor. From these facts, it is argued that the legislative intent in section 25617 was to provide penalties only where a section expressly states that a violation is a misdemeanor but does not provide the penalty therefor, and as sections 24750-24752, though prohibitive, do not characterize violations thereof as misdemeanors, section 25617 does not apply.

However, the legislative intent clearly appears otherwise. The section states that ''Every person convicted for *a violation of any of the provisions of this division* for which another penalty or punishment is not specifically provided for in this division *is guilty of a misdemeanor....*'' (Italics added.)

The real party in interest would construe the section to read in effect that ''Every person convicted of a misdemeanor for which another penalty or punishment is not specifically provided for in this division shall be punished by...'' If this is what the Legislature meant to say, it could easily have done so. This construction is erroneous for another reason, namely, that certain sections state that ''it is unlawful'' to do a certain act without specifically classifying the act as a misdemeanor or providing a penalty (for example §§ 25235-25237, and § 23404). The proposed construction would leave the violation of these ''unlawful acts'' without penalty.

In construing section 25617, it is important to review its legislative history. The section as originally enacted by Stats. 1933 (ch. 658, § 35, p. 1706) reads: ''Any person who violates or fails to comply with any order, rule or regulation made under or pursuant to the provisions of this act by the board, or who violates the terms or conditions of any license issued hereunder, *or who violates any of the provi-*

*sions of this act,* shall be liable for each such violation or noncompliance and shall be guilty of a misdemeanor punishable by a fine of not to exceed five hundred dollars or by imprisonment of not to exceed six months in the county jail or by both such fine and imprisonment." (Italics added.) This section as then enacted was entitled "Penalty."

There is no doubt what the Legislature intended by the then wording of the above section, as it specifically lays out what is intended. The Legislature, by Stats. 1935 (ch. 330, § 65, p. 1151) made a complete turnabout. This section, entitled "General penalty for misdemeanor," read: "Every person convicted of a misdemeanor for a violation of any of the provisions of this act for which another punishment is not specifically provided for herein, shall be punished by a fine of not more than five hundred dollars or by imprisonment in the county jail for not more than six months, or by both such fine and imprisonment."

It is clear that there was a material change in the wording of the 1935 statute from the 1933 statute, and that the Legislature intended to effect a change in the law. (*People* v. *Valentine* (1946) 28 Cal.2d 121, 142 [169 P.2d 1]; *People* v. *Perkins* (1951) 37 Cal.2d 62, 64 [230 P.2d 353].) As the above section read while the 1935 amendment was in effect, it did not make the mere violation of "any of the provisions" of the act a misdemeanor. Such violation had to have been characterized as a "misdemeanor" before the penalty could apply. Here again, according to the title and language of the section, it is clear that the Legislature intended merely to define the punishment upon conviction of a *misdemeanor,* specifically designated as such in the act.

In Stats. 1937 (ch. § 95, p. 2175) the Legislature amended section 65 to read as follows: "Every person *convicted for a violation of any of the provisions* of this act for which another penalty or punishment is not specifically provided for herein, shall be guilty of a misdemeanor and shall be punished by a fine of not more than five hundred dollars or by imprisonment in the county jail for not more than six months, or by both such fine and imprisonment." (Italics added.) The section was entitled "General penalty for misdemeanor."

The present section 25617, enacted in 1953 (Stats. 1953, ch. 152, § 1, p. 1023) is substantially the same as the amended version of section 65, *supra,* but is entitled "Penalties." As seen by the 1937 amendment and the 1953 enactment, the

Legislature again materially changed the wording of the section, indicating a different intention from that indicated by the section theretofore. It appears that the Legislature intended to revert to a meaning similar to that expressed in the original enactment of 1933, although the language is not quite as clearly expressed, and although substantially identical to the 1937 version, makes possible two interpretations, each of which is not entirely unreasonable in light of the legislative history.

Both section 25617 and section 25618 (the section relating to felonies) commence similarly. Section 25617 commences: *"Every person convicted* for a violation...." Section 25618 commences: *"Every person convicted* of a felony for a violation...." If there is any ambiguity in stating "Every person convicted for a violation" rather than the usual statement in statutes dealing with offenses, "Every person violating," such ambiguity must be interpreted in harmony with the manifest purposes and objectives of the whole statutory scheme. (See *Clements* v. *T. R. Bechtel Co.* (1954) 43 Cal.2d 227, 233 [273 P.2d 5].)

▪ It is stated that the Alcoholic Beverage Control Board has at no time attempted to prosecute persons for the violation of the sections in question here but has been content to limit itself to the remedy of suspending or revoking licenses for such violations, and therefore there has been an administrative interpretation of section 25617 to the effect that it does not apply to violations of sections 24749-24757. Assuming that mere failure to use one form of enforcement rather than another constitutes an administrative interpretation to the effect that the form not used is not available, a proposition we doubt, such an interpretation could not prevail against the interpretation which the Supreme Court appears to have made in the *Allied Properties* case, *supra*. ▪ Moreover, in *Joseph George, Distributor* v. *Department of Alcoholic Beverage Control* (1957) 149 Cal.App.2d 702, 710 [308 P.2d 773], the court, after stating that "where a statute needs construction, or implementation by rule or regulation . . ." contemporaneous administrative construction by an administrative agency charged with its enforcement is entitled to great weight, the court said (p. 710) : "... it is also firmly established that, 'Where there is no ambiguity and the interpretation is clearly erroneous, such administrative interpretation does not give legal sanction to a long continued incorrect construction.' (*California Drive-In Restaurant*

*Assn.* v. *Clark,* 22 Cal.2d 287, 294 [140 P.2d 657, 147 A.L.R. 1028] ; *Gunn* v. *State Board of Equalization,* 123 Cal.App.2d 283, 287 [266 P.2d 840].) Rules of interpretation in conflict with the plain meaning of a statute are void. (*Hodge* v. *McCall,* 185 Cal. 330 [197 P. 86].) '' In our case any interpretation contrary to that given in this opinion would be clearly erroneous.

 The language of section 25617, as construed in the light of the legislative history, as intimated by the Supreme Court in *Allied Properties* v. *Department of Alcoholic Beverage Control, supra,* and in view of the legislative purpose behind the act, must be construed to mean that a violation of any of the prohibited acts contained in division 9 of the Business and Professions Code is a misdemeanor, and unless another penalty is specifically provided, a violator may be punished in accordance with section 25617.

 Therefore, as any such violations are misdemeanors, petitioner's witnesses could be subject under section 182, subdivision 1, Penal Code, to a felony charge of conspiracy to commit such misdemeanors, as hereinbefore shown, and also under subdivision 5 to a felony conspiracy charge; hence they cannot be required to testify concerning any act relative to a conspiracy upon which the statute has not run.

A stipulation of the parties has been filed herein to the effect that in any event, one of the questions which was ordered answered by the trial court need not be answered.

Let a peremptory writ of prohibition issue prohibiting the trial court, in accordance with our views herein expressed, from requiring said witnesses to answer.

Sullivan, J., concurred.

MOLINARI, J.—I dissent for the reason that I do not believe it was the intent of the Legislature to make it a crime to sell an alcoholic beverage at less than the price stipulated in a fair trade contract. I am persuaded to this conclusion because the Legislature has made it eminently clear in the Alcoholic Beverage Control Act (Div. 9 of the Bus. & Prof. Code, §§ 23000 to 25762, incl.) that when it intended therein to make a particular violation of the act a crime it has specifically and meticulously said so in unmistakable language. There are at least 37 instances in which a violation is specifically declared to be a misdemeanor.[1] In three sections the

---

[1]§§ 23109, 23301, 23403, 23670, 25004, 25170, 25171, 25172, 25173, 25175, 25176, 25177, 25180, 25351, 25504, 25600, 25601, 25602, 25606,

offense is definitely designated as a felony.[2] In three other sections it is stated that it is "unlawful" to do the things therein specified without any specific statement that it is a misdemeanor or felony to do so.[3] And in another section it is provided that certain activity is "prohibited"[4] without stating that it is a crime to do what is thus prohibited.[5] It should also be noted that there are other sections which provide for seizure[6] or forfeiture[7] of alcoholic beverages, and one section which declares that it is a nuisance to do the things therein prohibited.[8]

Turning to section 24755, the statute particularly applicable to the violation of fair trade contracts, as it read at the times pertinent to the instant case[9] we find that prior to September 15, 1961, the Legislature chose to use the following language: "All distilled spirits sold at retail shall be, and any other alcoholic beverage may be, sold pursuant to a contract executed pursuant to this chapter. . . . *No licensee shall violate any of the provisions of any such contract.*" (Italics added.) On September 15, 1961, the Legislature repealed section 24755[10] and enacted an entirely new section bearing the same number and applicable to fair trade contracts. The said section, in pertinent part, now reads: "(a) *No package of distilled spirits . . . shall be sold at retail* in this State . . . unless a minimum retail price for such package first shall have been filed with the department in accordance with the provisions of this section. . . . (d) . . . *No retailer shall sell* any package of distilled spirits as a loss leader. . . . (e) . . . No offsale licensee *shall sell* any package of distilled spirits at any price less than the effective filed price of such package unless written permission is granted by the department. . . ." (Italics added.)[11] It is significant that section

25607, 25608, 25609, 25610, 25614, 25615, 25616, 25619, 25630, 25631, 25632, 25633, 25656, 25657, 25658, 25661, 25662 and 25663.

[2]§§ 23301, 25372 and 25603.

[3]§§ 23404, 25235 and 25237.

[4]§ 25664.

[5]It should be particularly noted that this section is contained in an article (art. 3, §§ 25656-25665, incl.), which contains 9 sections which relate to prohibited activity, 8 of which specifically state that the activity therein prohibited is a misdemeanor.

[6]§§ 23666, 25174, 25236 and 25350.

[7]§§ 23660 and 23668.

[8]§ 25604.

[9]From December 1959 to April 3, 1962.

[10]See § 24755, legislative history.

[11]The effect of the amendment was to incorporate rule 99 theretofore adopted by the department to supplement § 24755 pursuant to rule-

24755 as it now reads, and as it read prior to its amendment in 1961, does not specifically declare or state that its violation is a misdemeanor or a felony, nor does it use the terminology "unlawful" in connection with its proscription. It is also noteworthy that with respect to the sale of wine[12] below the minimum sales price the Legislature has specifically provided that the department may suspend or revoke a license for a violation of wine fair trade contracts subject to certain limitations.[13] Again, in our probe of the legislative intent, we look at sections 25000 to 25004, inclusive, applicable to the selling of *beer* pursuant to a written schedule of selling prices, and we find that in such instance the Legislature has specifically provided that "*any departure or variance therefrom by a licensee is a misdemeanor.*"[14] (Italics added.)

It is readily apparent from a reading of the Alcoholic Beverage Control Act that the Legislature has seen fit to declare certain violations to be a crime while others are merely subject to disciplinary action. The latter sanction is, of course, applicable where there has been a violation of a penal provision.[15] The administrative disciplinary proceedings under the Act are covered by sections 24200 to 24301, inclusive.[16] The power and authority to revoke and suspend licenses is likewise provided for in article XX, section 22, of the California Constitution.[17] Such disciplinary proceedings are not

---

making power granted by § 24757 with reference to fair trade contracts and price posting.

[12]By amendment in 1961, the sale of wine was embraced within the provisions of § 24755. Prior thereto it was covered by separate provision. See § 24862.

[13]§ 24880 as it now reads, and as it read at all times herein pertinent, provides as follows: "For a violation of any of the provisions of this chapter or rules adopted pursuant to this chapter, the department may suspend or revoke a license as follows: (a) For a first offense, not exceeding 10 days' suspension. (b) For a second offense, not exceeding 30 days' suspension. (c) For a third offense, the department may suspend or revoke a license."

[14]§ 25004.

[15]See § 24200, subd. (b), which provides in pertinent part, that "the violation or the causing or the permitting of a violation by a licensee of ... any other penal provisions of law of this State prohibiting or regulating the sale ... of alcoholic beverages" is a ground which constitutes a basis for the suspension or revocation of licenses.

[16]The grounds for suspension and revocation are set out in detail in § 24200. These include the violation of any rules of the department as well as the violation of penal provisions. (See subd. (b).)

[17]California Const., art. XX, § 22, in relevant part provides: "The department shall have the power, in its discretion, to deny, suspend or

criminal in nature, nor are they governed by the law applicable to criminal cases. (*Cornell* v. *Reilly*, 127 Cal.App.2d 178, 184 [273 P.2d 572].) As stated in *Cornell*, ''The object of an administrative proceeding aimed at revoking a license is to protect the public, that is, to determine whether a licensee has exercised his privilege in derogation of the public interest, and to keep the regulated business clean and wholesome. Such proceedings are not conducted for the primary purpose of punishing an individual.'' (P. 184.)

My colleagues, in reaching the conclusion that the selling of alcoholic beverages at less than the minimum retail sales price pursuant to fair trade contracts is a crime, have been persuaded by the peculiar language of section 25617, which provides that ''Every person *convicted for a violation of any of the provisions of this division* for which another penalty or punishment is not specifically provided for in this division *is guilty of a misdemeanor* and shall be punished by a fine of not more than five hundred dollars ($500) or by imprisonment in the county jail for not more than six months, or by both such fine and imprisonment.'' (Italics added.) The language of the section is somewhat tautological, to say the least. It says in essence that a person convicted of violating the provisions of the Alcoholic Beverage Control Act, where no other penalty or punishment is specifically provided, is guilty of a misdemeanor. It is plain that before the penalty or punishment therein provided for can occur there *must be a conviction*. A ''conviction'' presupposes the existence of a criminal offense. A ''conviction'' is the ''act of proving, finding, or adjudging a person guilty of an offense or crime. ...'' (Webster's Third New Internat. Dict.) Conviction is the verdict in a criminal case; the ascertainment of guilt. (*People* v. *Hurley*, 155 Cal.App.2d 350, 352 [317 P.2d 1003]; *People* v. *Acosta*, 115 Cal.App. 103, 107 [1 P.2d 43].) It is beyond peradventure that one cannot be convicted of a crime unless the offense has first been declared to be a crime. In the case at bench the Legislature has not declared it to be a crime to violate the provisions of section 24755.

In my opinion, the terminology ''is guilty of a misdemeanor'' cannot make a crime of what has not been declared to be a crime. Section 25617, as I read it, has two objectives. Its main purpose is to provide for punishment for a misdemean-

revoke any specific alcoholic beverage license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals. ...''

or where no other penalty or punishment has been specifically provided for. Of the 37 offenses specifically declared to be misdemeanors, only three provide for the punishment or penalty.[18] Accordingly, section 25617 provides the penalty or punishment for the other 34 misdemeanors provided for in the act. The other objective of section 25617 is to make certain that all crimes for which a person shall have been convicted under the act for which another penalty or punishment is not specifically provided shall be deemed to be guilty of a misdemeanor, i.e., all crimes which have not by the act been declared to be felonies. It should be here noted that none of the particular statutes providing that the offenses therein described constitute a felony provide for a penalty or punishment. Such penalty or punishment is provided for in section 25618.

The effect of the majority opinion is to make every violation of the Alcoholic Beverage Control Act at least a misdemeanor. This was not the intent of the Legislature. The apprehension of the majority that to hold that only those statutes which specifically declare the violation to be a misdemeanor are within the contemplation of section 25617 would leave other violations without punishment may, in my opinion, be allayed by what appears to be a clear legislative intent that the only sanction intended for the commission of a substantial number of violations of the act is that provided for by way of disciplinary proceedings looking to suspension or revocation of licenses. The majority expresses concern that the conclusion urged in this dissent would leave without penalty the three instances in the act wherein it is merely stated that "[i]t is unlawful" to do a certain act.[19] This assertion is likewise met, in my opinion, by what has been herein said with respect to the sanction imposed by disciplinary proceedings. Moreover, while an unlawful act is one expressly forbidden by law, it need not necessarily be punishable as a crime. " 'Unlawful is not synonymous with criminal. ". . . Every criminal act is illegal or unlawful, but illegal or unlawful acts may not be criminal." ' " (*People* v. *Ranney*, 213 Cal. 70, 77 [1 P.2d 423]; see *People* v. *Wilson*, 78 Cal. App.2d 108, 114 [177 P.2d 567]; *Sultan Turkish Bath* v. *Board of Police Comrs.*, 169 Cal.App.2d 188, 200 [337 P.2d

[18] §§ 25606 ($500 and or not more than 1 year); 25616 ($100-$1,000 and or 1 to 6 months); and 25656 ($100 and or 3 months).

[19] §§ 23404, 25235 and 25237.

203] ; and see Civ. Code, § 1667.[20])

In order to comply with the constitutional requirement of due process of law, the crime itself which is prohibited and punishable as such must be clearly defined; it cannot be left to inference, implication, innuendo or surmise; and a statute setting forth certain acts as a criminal offense should be specific and not open to doubt. (*MacLeod* v. *City of Los Altos*, 182 Cal.App.2d 364, 368 [6 Cal.Rptr. 326]; *California Gasoline Retailers* v. *Regal Petroleum Corp.*, 50 Cal.2d 844, 862 [330 P.2d 778]; *Sharpensteen* v. *Hughes*, 162 Cal.App.2d 381, 387 [328 P.2d 54].) Accordingly, it is a well-established rule of statutory construction that the courts will not impose penalties for noncompliance with statutory provisions in addition to those that are provided expressly or by necessary implication. (*City Lincoln-Mercury Co.* v. *Lindsey*, 52 Cal.2d 267, 276 [339 P.2d 851, 73 A.L.R.2d 1420].) It is also axiomatic that when language is used in a penal law which is reasonably susceptible of two constructions, that construction which is more favorable to the offender will be adopted. (*People* v. *Ralph*, 24 Cal.2d 575, 581 [150 P.2d 401]; *People* v. *Valentine*, 28 Cal.2d 121, 143 [169 P.2d 1]; *People* v. *Smith*, 44 Cal.2d 77, 79 [279 P.2d 33]; *People* v. *Stuart*, 47 Cal.2d 167, 175 [302 P.2d 5, 55 A.L.R.2d 705]; *Chessman* v. *Superior Court*, 50 Cal.2d 835, 843 [330 P.2d 225]; *In re Tartar*, 52 Cal.2d 250, 256 [339 P.2d 553].) It is not the judicial function, therefore, to make a crime of an offense which the Legislature has not specifically declared to be a crime. As stated in *People* v. *Ralph, supra*: "In other words, criminal statutes will not be built up 'by judicial grafting upon legislation. . . .' " (P. 581.) As I have pointed out above, section 24755 does not specifically define or set forth the acts therein mentioned as a criminal offense. As for section 25617 its language is doubtful, ambiguous and reasonably susceptible of two constructions so as to allow for a construction against its making a penal statute out of section 24755. In tracing the legislative history of section 25617, the majority opinion acknowledges that it is susceptible of two interpretations, but reasons that because each is reasonable, the construction reached by it is proper. It is submitted that this conclusion is not consonant with the policy applicable to

[20]§ 1667 provides: "That is not lawful which is: 1. Contrary to an express provision of law; 2. Contrary to the policy of express law, though not expressly prohibited; or, 3. Otherwise contrary to good morals."

the construction of penal statutes in the light of the authorities above alluded to.

While not indifferent to the legislative history of section 25617, I am not in accord with the conclusion reached by the majority opinion that the Legislature intended to revert to a meaning similar to that expressed in the original enactment in 1933. That statute expressly and clearly made any violation of the act a misdemeanor. In its present form section 25617 is not so explicit or clear, but leaves in doubt whether it intends to make every violation of the act a misdemeanor. By its peculiar and ambiguous language it leaves the legislative intent subject to two reasonable constructions, and hence must be tempered to the rule hereinabove mentioned.

I am persuaded, moreover, that while the Legislature has delegated to wholesalers the authority to set prices by way of fair trade contracts, and while these prices are subject to be enforced by the sanction of license suspension or revocation, it was never the intent of the Legislature to make it a crime to violate such fair trade contracts. In *Allied Properties* v. *Department of Alcoholic Beverage Control,* 53 Cal.2d 141 [346 P.2d 757], the Supreme Court, in upholding the constitutionality of fair trade contracts under the Alcoholic Beverage Control Act, held that the Legislature has power to provide for administrative sanctions with respect to a licensee who violates the fair trade provisions of the act. The Supreme Court, however, entertained reservations as to criminal sanctions. Said the court: ''We need not determine whether the criminal sanctions are proper since such penalties were not imposed in this case, and the provision authorizing them is severable.'' (P. 150.) I am not unmindful that the majority rely upon dictum in *Allied* which is indicative of a recognition by the Supreme Court that section 25617 makes it a crime to violate fair trade provisions under the Alcoholic Beverage Control Act. The Supreme Court acknowledges that it was not called upon to make the determination now confronting us in this case, because no criminal prosecution was involved there. The court was not attempting to construe section 25617, but was merely paraphrasing the actual wording of the section without placing it under the close scrutiny required in the instance of statutory construction. In any event, it is apparent from the language quoted above that while the Supreme Court did state that the Alcoholic Beverage Control Act ''provides for administrative and criminal sanctions'' (p. 150) with respect to fair trade contracts, it

was not making any decision as to the propriety of criminal sanctions, but was leaving that question for future determination.

Accordingly, the peremptory writ should be denied.

The petition of the real party in interest for a hearing by the Supreme Court was denied December 30, 1963. Peters, J., was of the opinion that the petition should be granted.